AD GLOBAL FUND, LLC, by and through NORTH HILLS HOLDING, INC., a Partner Other Than the Tax Matters Partner, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–336T.

United States Court of Federal Claims.

Sept. 16, 2005.

---

David D. Aughtry, Atlanta, GA, for plaintiffs. George A. Hrdlicka and Juan F. Vasquez, Jr., Chamberlain, Hrdlicka, White, Williams & Martin, of counsel.

Stuart J. Bassin, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant. William K. Drew, Department of Justice, of counsel.

M. Todd Welty, David E. Colmenero, and Josh O. Ungerman, Meadows, Owens, Collier, Reed, Cousins, Blau, L.L.P., Dallas, TX, filed a brief amicus curiae.

## OPINION

CHRISTINE O. C. MILLER, Judge.

This case is before the court on plaintiff's motion for summary judgment. Plaintiff asserts that the Internal Revenue Service failed to issue a Final Partnership Administrative Adjustment for plaintiff's 1999 tax return within the statutorily required time period prescribed by 26 U.S.C. (the "I.R.C.") § 6229(a) (2000), thereby rendering plaintiff's partnership items "final" and barring the IRS from further action against plaintiff. Argument has been held, and the parties and amicus curiae filed supplemental briefs.

The issue to be resolved calls for interpretation of a provision of the Internal Revenue Code, a tax statute. Congress enacted tax reform legislation governing partnerships at a time when the fisc took note of the impact of tax shelters. The legislation intended uniformity and specificity. The parties array a smorgasbord of legislative history with vary-

ing pedigrees under the law to support their respective interpretations of legislation that is ambiguous. Rarely does resort to legislative history fail to arm a litigant to argue any sentient interpretation, and this case is no exception. Crediting Congress with appreciation for the English language and syntax, save in the exceptional instance, serves as the foundation for judicial interpretation of legislative acts. The current state of the law, regrettably, welcomes use of legislative history as a reference library, with the bracing uncertainty, lack of predictability, and subjectivity that a loosely regulated data base implies. This opinion applies a conservative use of legislative history with the following modest objectives: to construe language that, only after every effort has been made to honor its plain meaning, has been deemed ambiguous and next to identify the strongest and most explicit and consistent expression of legislative intent that yields a reliable interpretation, and failing that and only then, to call on a presumption that aids in resolving issues of construction.

## FACTS

The following facts are undisputed. AD Global Fund, LLC ("plaintiff"), is a limited liability company established under the laws of the State of Delaware in 1999. For federal tax purposes, plaintiff is a partnership subject to the Unified Partnership Procedures of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221–6234 (2000). The Diversified Group Incorporated ("Diversified") serves as the tax matters partner (the "TMP") of plaintiff, and North Hills Holding, Inc. ("North Hills"), is a member and notice partner [1] of plaintiff.

On or about April 15, 2000, plaintiff filed its United States Partnership Return for the taxable year 1999, and the return was deemed filed on Monday, April 17, 2000. On or about May 27, 2003, the Internal Revenue Service (the "IRS") issued a Notice of Beginning of [Partnership] Administrative Proceeding (the "NBAP") to plaintiff. On or about October 9, 2003, the IRS mailed plain-

tiff's TMP the Notice of Final Partnership Administrative Adjustment (the "FPAA") for the 1999 partnership year.

As explained more fully in this opinion, this process initiates the IRS's treatment of partnership items. The IRS audits a partnership at the level of the legal entity, not at the partner level. The NBAP is sent to the individual parties, I.R.C. § 6223(a)(1), (d)(1). If the IRS challenges the reporting of any item, it issues the FPAA as a predicate to making individual partner assessments. I.R.C. §§ 6223(a)(2), (d)(2), 6225(a). The TMP then may contest the adjustments in the FPAA in court. I.R.C. § 6226(a). However, a notice partner may initiate suit if the TMP does not do so. I.R.C. § 6226(b)(1). All parties are treated as partners in the event either type of proceeding is commenced. I.R.C. § 6226(c), (d)(1)(B), and the court can determine all partnership items for the affected year. I.R.C. § 6226(f).

Plaintiff filed a Complaint for Readjustment of Partnership Items Under Internal Revenue Code § 6226 on March 8, 2004. Subsequently, plaintiff moved for summary judgment, asserting that the IRS did not issue an FPAA within the three-year period set forth in I.R.C. § 6229(a). The issue posed by plaintiff's motion concerns the period of time within which the IRS must assess tax attributable to partnership items. Essential to its disposition is the interplay between two provisions of the I.R.C.: Whereas plaintiff contends that the time period in I.R.C. § 6229(a) is a separate period of limitations exclusive of the regular period of limitations set forth in I.R.C. § 6501(a), defendant argues that I.R.C. § 6229(a) does not supersede I.R.C. § 6501(a) and serves, instead, as a minimum period for assessments attributable to partnership items that may, on occasion, extend the period of limitations of I.R.C. § 6501(a). Therefore, the issue to be resolved is whether section 6229(a) is independent of section 6501(a), or whether section 6229(a) merely serves as an extension of section 6501(a).

1. A notice partner is a "partner who, at the time in question, would be entitled to notice under" I.R.C. § 6223(a) as a partner who has furnished his name and address to the Secretary. I.R.C. § 6231(a)(8).

## DISCUSSION

Within the context of plaintiff's summary judgment motion, the parties frame the issues slightly differently. Plaintiff asserts that the IRS failed to assess taxes attributable to partnership items within the partnership-specific three-year period required by I.R.C. § 6229(a), which is the only time period within which the IRS may assess tax on partnership items. Defendant rejoins that the IRS may assess tax attributable to partnership items within the period set by I.R.C. § 6501(a) after the period of I.R.C. § 6229(a) has expired. As a complement to its contention, defendant asserts that the issuance of an FPAA, which suspends the "minimum limitations period," see, e.g., Def.'s Br. filed Jan. 31, 2005, at 5, specified in I.R.C. § 6229(a), perforce suspends the running of the limitations period in I.R.C. § 6501(a).

### I. Standard of review

RCFC 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); see Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1370–71 (Fed.Cir.2004).

In the instant case, the facts relevant to the summary judgement motion are undisputed. The court is left with a pure issue of law upon which summary judgment appropriately may be rendered.

### II. TEFRA

#### 1. Background of TEFRA

The Tax Equity and Fiscal Responsibility Act of 1982 was enacted to "improve the auditing and adjustments of income tax items attributable to partnerships." Alexander v. United States, 44 F.3d 328, 330 (5th Cir. 1995); see also Roberts v. Comm'r, 94 T.C. 853, 859, 1990 WL 77203 (1990) ("Congress enacted TEFRA to provide a method of uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner."). Prior to its passage, tax liability adjustments of individual partners based on the operations of the partnership were rendered at the partner level, often creating inconsistent and duplicative results between partners in the auditing process. Callaway v. Comm'r, 231 F.3d 106, 107 (2d Cir.2000). If, for example, the IRS deemed it necessary to extend the statute of limitations concerning the partners' liability for the operation of the partnership, each partner, as opposed to the singular voice of the partnership, was required to consent to the extension. Id. at 108. In a like manner, settlement agreements and judicial determinations affecting one partner were not binding on the other partners. Id.

With the enactment of TEFRA, however, came a "single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level."[2] Id. This treatment allows for one proceeding to determine all partnership items,[3] and the result of this proceeding then applies to each individual partner's returns without further deficiency proceedings. Roberts, 94 T.C. at 859–60. As a basic precept of partnership law, partnerships themselves do not pay federal income taxes. Instead, TEFRA requires a partnership to file an annual information return that reports its partners' distributive shares[4] of income, gains, deductions, and

---

**2.** A "partnership item" is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent ... such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). More commonly, partnership items are "[i]tems of income[,] gain, loss, deduction, or credit of the partnership." Callaway, 231 F.3d at 108.

**3.** All partners are eligible to participate in this proceeding.

**4.** Partners must file individual income tax returns consistent with the partnership's return. I.R.C. § 6222(a). If a partner disagrees with the treatment of his distributive share of partnership items on the partnership's return, he may either (1) notify the IRS of his decision to treat such partnership item inconsistently on his own return compared to the partnership return, I.R.C. § 6222(b), or (2) request an administrative adjustment of partnership items, I.R.C. § 6227(a). See Callaway, 231 F.3d at 109. Failure to take either action when filing an individual return

credits. Partners are individually responsible for reporting their pro rata share of tax on their own income tax returns. *Weiner v. United States*, 389 F.3d 152, 154 (5th Cir. 2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 2312, 161 L.Ed.2d 1091 (2005). As such, treatment of partnership items is determined at the partnership level. *See* I.R.C. § 6221 ("Except as otherwise provided in this subchapter, the tax treatment of any partnership item ... shall be determined at the partnership level."). Partnership items may be adjusted only at the partnership level and only pursuant to TEFRA's provisions. *Callaway*, 231 F.3d at 109; *see* I.R.C. §§ 6221, 6225(a).

The IRS may audit a partnership. The process is initiated when the IRS sends an NBAP to any partner entitled to notice. I.R.C. § 6223(a)(1); *Callaway*, 231 F.3d at 109. If the IRS audit results in the adjustment of any partnership items on the partnership return, the IRS must send the individual partners an FPAA. I.R.C. § 6223(a)(2); *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.1998). Once the FPAA has been issued, the TMP has ninety days to file a petition for a readjustment of the partnership items for the taxable year at issue with the Tax Court, the United States Court of Federal Claims, or the United States District Court in which the partnership's principal place of business is located. I.R.C. § 6226(a). If the TMP does not file a petition for readjustment within ninety days, other partners have sixty days within which to file a petition for a readjustment of the partnership items for the taxable year. *Id.* § 6226(b)(1). As long as they have an interest in the outcome of the action, all partners are treated as parties to the petition, whether it is filed by the TMP or by a notice partner. *Id.* § 6226(c), (d).

Once the adjustments are final, "the IRS may assess partners with the tax which properly accounts for their distributive share of the adjusted partnership items, without notice, as a computational adjustment." *Callaway*, 231 F.3d at 109–10 (citing I.R.C.

§§ 6225(a), 6230(a)(1), 6231(a)(6)). Additional tax liability may be assessed against individual partners for one year after the IRS completes the partnership's tax determination. *Weiner*, 389 F.3d at 155 (citing I.R.C. § 6229(d)). A partner may contest his tax liability, but may not bring an action for a refund attributable to partnership items. *Id.* at 110 (citing I.R.C. § 7422(h)). Once a partner enters into a settlement with the IRS regarding his tax liability, he is no longer eligible to participate in any partnership level litigation. *Id.* (citing I.R.C. §§ 6228(a)(4), 6224(c)(1)). Per I.R.C. § 6231(b)(1)(C), partnership items become nonpartnership items when settlement occurs with an individual partner concerning such items.

### 2. *I.R.C. § 6229(a) and I.R.C. § 6501*

#### 1) *Language of I.R.C. § 6229(a) and I.R.C. § 6501*

Section 6229 is entitled "Period of limitations for making assessments." I.R.C. § 6229(a) guides the timely issuance of an FPAA, providing:

> Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions).

This three-year period may be extended by I.R.C. § 6229(b)(1), which reads, in relevant part:

> (b) Extension by agreement.—
>
> (1) In general.—The period described in subsection (a) (including an extension period under this subsection) may be extended—

---

inconsistent with that of the partnership return may result in a deficiency being "assessed against the partner without notice, as a 'computational adjustment.'" *Callaway*, 231 F.3d at 108–109. A "computational adjustment" is "the

change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." I.R.C. § 6231(a)(6).

(A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and

(B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner . . . .

The competing statute is I.R.C. § 6501(a), which provides, in pertinent part: "General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ."

Plaintiff contends that I.R.C. § 6229(a) is a separate statute of limitations distinct from I.R.C. § 6501, whereas defendant conceptualizes I.R.C. § 6229(a) as a minimum period for the assessment of tax, not a statute of limitations that operates apart from I.R.C. § 6501. Plaintiff cites numerous rulings from various courts purporting to support its claim that section 6229(a) controls the determination of partnership items. *See Weiner,* 389 F.3d at 154 ("The IRS is given three years from the later of (1) the date a partnership return is due, or (2) the date the partnership return is filed, to issue an FPAA."); *Monahan v. Comm'r,* 321 F.3d 1063, 1065 n. 2 (11th Cir.2003) ("Normally, the period for assessing any tax with respect to a partnership item for a specific partnership taxable year is three years from the date the partnership return is filed."); *Madison Recycling Assocs. v. Comm'r,* 295 F.3d 280, 286 (2d Cir.2002) (paraphrasing "the period for assessing income tax attributable to any partnership item . . . for a partnership taxable year" as the period defined in I.R.C. § 6229(a)); *Callaway,* 231 F.3d at 110 (construing I.R.C. § 6229(a) to "supersede the individual partner's general three-year limitations period in section 6501(a)"); *CC & F W. Operations L.P. v. Comm'r,* 273 F.3d 402, 405 (1st Cir.2001) (noting that "Section 6229(a) says that the limitations period for assessing tax on a taxpayer, where the tax is attributable to a partnership item, does not expire before three years after the partnership return was filed"); *Med. & Bus. Facilities, Ltd. v. United States,* 60 F.3d 207, 209–10 (5th Cir.1995) (citing I.R.C. § 6229(a) for the "statutory period for assessing any income tax attributable to partnership items

for a partnership's tax year"); *Monetary II Ltd. P'ship v. Comm'r,* 47 F.3d 342, 344 (9th Cir.1995) (citing I.R.C. § 6229(a) for the limitations period for assessing income tax attributable to a partnership); *Slovacek v. United States,* 36 Fed.Cl. 250, 255 (1996) ("The statute of limitations for partnership assessments is set out in I.R.C. § 6229(a) . . . .").

In support of its position, defendant relies on the United States Tax Court's majority opinion in *Rhone–Poulenc Surfactants & Specialties, L.P. v. Comm'r,* 114 T.C. 533, 542, 2000 WL 863142 (2000), which resolves the possible conflicts between I.R.C. §§ 6501 and 2209. Defendant also cites *Andantech L.L.C. v. Comm'r,* 331 F.3d 972, 976 (D.C.Cir.2003), in which the United States Court of Appeals for the District of Columbia Circuit approved the reasoning of the Tax Court in *Rhone–Poulenc.* These are but two cases against many, but they are more recent and address the issue more directly.

### 2) *References to I.R.C. § 6229(a)*

Throughout I.R.C. § 6229, reference is made to the "period" described in section 6229(a). Section 6229(b)(1) allows for an extension of the "period described in subsection (a)." In explicit coordination with section 6501, I.R.C. § 6229(b)(3) makes note of an extension of the general period of assessment under section 6501(c)(4), and provides that such agreements extend the "period described in . . . [6229](a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items." Further, section 6229(d) suspends the running of the "period specified in subsection (a)" when notice of an FPAA is mailed to the TMP. In the event of an unidentified partner, section 6229(e)(2)(A) provides that the Secretary mail a notice to the TMP "before the expiration of the period otherwise provided" in section 6229(a) as one method for extending the period of time for assessment of tax attributable to any partnership item. Another reference to the period of limitations of section 6229(a) appears in section 6229(f)(1), which sets forth the protocol for treating partnership items that have be-

come nonpartnership items "before the expiration of the period otherwise provided in this section." This subsection also refers to "the period of limitations" for assessing tax attributable to partnership items when a partner has entered into a settlement agreement. I.R.C. § 6229(f)(2). Finally, subsection 6229(g) provides the "period of limitations for penalties," and section 6229(h) suspends "the running of the period of limitations provided in this section" if a bankruptcy petition is filed naming a partner as a debtor.

Section 6501 includes references to section 6229. One instance is a cross-reference for "extension of period in the case of partnership items." I.R.C. § 6501(n)(2).

### 3) *The parties' positions on the plain meaning of I.R.C. § 6229(a)*

The phrasing of section 6229's time period as a "period of limitations," combined with the language that the period for assessment "shall not expire before" three years after the later of the date the partnership return was filed or the last day for filing such return, I.R.C. § 6229(a), precipitate the question as to whether section 6229(a) serves as a statute of limitations for making assessments on individual partners, or functions as a special provision for assessing tax on partnership items, thereby extending the three-year period of I.R.C. § 6501(a). Plaintiff contends that the statute plainly creates a separate statute of limitations. Defendant reads the language as plainly extending the applicable statute of limitations. Both would be colorable arguments for the plain meaning of the statute were it not for the imprecision in structuring the provision: Language denoting an extension of a period of limitations is seeded with repeated phrases that denote the creation of a separate, fully contained and integrated statute of limitations for partnership items.

## III. *Caselaw dynamics*

The following cases impart guidance on the interplay of I.R.C. §§ 6229(a) and 6501(a) and the precedence of one or the other in dictating which provision dictates the duration of the limitations period. The parties disagree on whether this issue has been addressed directly in prior caselaw so as to dictate an outcome in the present controversy. Regardless of the manner of discussion-whether in dicta or in more substantive discourse-none of the decisions cited by the parties, and discussed in this opinion, were issued by the United States Supreme Court or the United States Court of Appeals for the Federal Circuit. Therefore, they constitute persuasive authority and are not binding on the United States Court of Federal Claims.

The court must also consider the Federal Circuit's guidance that, while other circuits do not create binding precedent on the Federal Circuit, "we accord great weight to the decisions of our sister circuits when the same or similar issues come before us, and we 'do not create conflicts among the circuits without strong cause.'" *Admiral Fin. Corp. v. United States*, 378 F.3d 1336, 1340 (Fed.Cir. 2004) (quoting *Wash. Energy Co. v. United States*, 94 F.3d 1557, 1561 (Fed.Cir.1996)). However, in the instant controversy, "[a] conflict[ ] among the circuits" already exists: The D.C. Circuit has held that section 6229(a) operates as an extension, while other circuits have determined (in dicta or otherwise) that it is a statute of limitations. The court therefore gives serious consideration to the competing views.

### 1. *Maxwell v. Commissioner*

Petitioners, Larry and Vickey Maxwell, were partners in VIMAS, LTD. ("VIMAS"), a Texas limited partnership formed to "acquire, market, and exploit video game masters." *Maxwell v. Comm'r*, 87 T.C. 783, 785, 1986 WL 22033 (1986). Respondent mailed a notice of deficiency to petitioners determining deficiencies for their taxable years inclusive of 1979–1982. The 1982 deficiency arose, "in part, from a disallowance of petitioners' distributive share of [VIMAS's] claimed loss and investment tax credit for the partnership's" 1982 taxable year. *Id.* at 785. Petitioners' interest in VIMAS affected the 1979 and 1980 deficiencies, as those deficiencies resulted from the disallowance of investment tax carryback claimed by petitioners in 1982 as partners in VIMAS. Further, an addition to tax was determined for

petitioners' 1979, 1980, and 1982 tax years[5] for the alleged overvaluation or overstated basis of VIMAS's partnership property, and an addition to tax was determined for 1982[6] based on petitioners' claimed tax benefits resulting from their interest in VIMAS. *Id.*

On February 28, 1985, respondent initiated an administrative proceeding pursuant to I.R.C. § 6224 and mailed Mr. Maxwell, as TMP, a notice of the beginning of the administrative proceeding. *Id.* at 786. At the time the matter was decided, notice of an FPAA had not been issued, and Mr. Maxwell had executed a Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership on behalf of VIMAS. *Id.* Petitioners challenged the determination of deficiencies and additions to tax that arose out of the adjustments relating to partnership items of income, deduction, or credit for certain partnership taxable years.

Respondent asserted that particular adjustments that resulted in the I.R.S.'s determination of a portion of the 1982 deficiency were partnership items and that the Tax Court had jurisdiction over these items only if they were raised in a petition after an FPAA had been issued pursuant to I.R.C. § 6226 and other rules. *Id. Maxwell* is instructive because it "presents the dichotomy between, on the one hand, the procedures applicable to the determination and redetermination of *deficiencies* and, on the other hand, the procedures applicable to the administrative adjustment and judicial readjustment of *partnership items.*" *Id.* at 787. Hence, the implication is that a difference exists between TEFRA determinations and matters resolved outside of TEFRA. As the Tax Court aptly noted, prior to TEFRA, this dichotomy did not exist. *Id.*

The Tax Court's discussion concerning TEFRA's provisions is insightful, particularly in drawing a distinction between matters that may be subject to a partnership proceeding (and therefore must involve partnership items) and matters that may not be subject to such proceedings (because the dispute arises from nonpartnership items). The court emphasized the difference between partnership and nonpartnership proceedings:

> If the tax treatment of a "partnership item" is at issue, the statute requires the matter to be resolved at the partnership level. Respondent has no authority to assess a deficiency attributable to a partnership item until after the close of a partnership proceeding, and may be enjoined from making premature assessments. Special rules apply to settlement agreements. *Special statutes of limitations apply to assessment of deficiencies attributable to partnership items.*

*Id.* at 787–88 (citations omitted) (emphasis added). The Tax Court proceeded to examine the statutory pattern, along with a congressional conference report, to determine that "administrative and judicial resolution of disputes involving partnership items [is] to be separate from and independent of disputes involving nonpartnership items." *Id.* at 788. Based on this reasoning, partnership items may be considered only in the partnership proceeding and must be separate from a partner's personal case. *Id.* Through its discussion of separate partnership proceedings, the court impliedly-if not directly in its comment on special statutes of limitations-determined that partnership proceedings follow procedures dictated under TEFRA, while all nonpartnership matters on a partner's federal income tax return still are subject to existing administrative and judicial resolution procedures in determining a partner's tax liability.

### 2. *Roberts v. Commissioner*

Petitioners were partners in three partnerships organized to explore for oil and gas (collectively, the "partnerships"). *Roberts,* 94 T.C. at 853–54. After respondent filed a notice of deficiency pertaining to the partnerships, petitioners filed a motion to dismiss for lack of jurisdiction and to strike portions of respondent's notice. Respondent determined deficiencies for the 1980 and 1983 taxable years, and additions to tax, per I.R.C. § 6653(a), for 1980, and per I.R.C. § 6653(a)(1) and (2) and I.R.C. § 6661(a), for

---

**5.** This determination was pursuant to I.R.C. § 6659.

**6.** This determination was pursuant to I.R.C. § 6653(a)(2).

1983. Respondent issued the notice of deficiency on April 9, 1987.

Respondent's notice of deficiency did not allow any of petitioners' claimed losses from the partnerships. The explanation of adjustments for each partnership provided by respondent included a variety of reasons for not allowing the partnership losses. Specifically, respondent claimed that petitioners did not show that the

> (1) the partnerships possessed the requisite profit objective with regard to their activities; (2) the amounts claimed as MAR's were actually paid or incurred and, if paid or incurred, were ordinary and necessary trade or business expenses; and (3) the MAR's and/or assumption agreements qualified as additions to petitioners' basis in each partnership.

*Id.* at 857. Respondent also questioned whether the Minimum Annual Royalty obligations and the assumption of those obligations qualified "as additions to the partners' amount at risk, since petitioners cannot claim losses greater than their amount at risk." *Id.* at 857–58.

The Tax Court identified the primary issues as whether it had jurisdiction to hear respondent's claim that side agreements existed between petitioners and the sublessors, and whether those agreements protected petitioners against loss. *Id.* at 858. Before examining that issue, however, the court addressed the partnerships' status under I.R.C. § 6231(a)(1). The partnerships were subject to those provisions because they all were within TEFRA's scope. The Tax Court noted that respondent did not begin any partnership proceedings for the partnerships and, as such, did not issue FPAAs for the partnerships' 1983 taxable years. Significantly, the court determined the that the statute of limitations period for FPAAs concerning the 1983 taxable year expired on April 15, 1987. To support this conclusion, the court cited I.R.C. § 6229(a), but made no mention of I.R.C. § 6501. The court was

definitive in finding that no partnership proceedings could occur after that date for the partnerships' 1983 returns when it said that "[c]learly, there can be no partnership proceedings to adjust or modify the partnership items as reported on the 1983 returns of [the partnerships]." *Id.* at 857.

### 3. *Cambridge Research & Development Group v. Commissioner*

Cambridge Research and Development Group ("Cambridge") developed and licensed inventions. *Cambridge Research & Dev. Group v. Comm'r,* 97 T.C. 287, 288, 1991 WL 169192 (1991). While numerous limited partners were included in Cambridge, Lawrence M. Sherman and Kenneth N. Sherman were the only general partners of the partnership.[7] *Id.* at 291. The Cambridge tax return for 1983 was signed by Lawrence and indicated that Lawrence and Kenneth had equal interests in the partnership's profit at the end of the taxable year. *Id.* at 289. In late 1987 or early 1988,[8] respondent issued a Notice of FPAA. Unless the Special Consent To Extend the Time To Assess Tax Attributable to Items of a Partnership (the "Consent"), executed by Lawrence on September 16, 1986, was effective to extend the three-year period of limitations for assessments attributable to partnership items, the FPAA was issued after the expiration of the period of limitations for assessment under I.R.C. § 6229(a).

The primary question before the court was whether Lawrence had the authority to sign the Consent on behalf of the partnership. Before resolving that matter, however, and most encouraging to the current petitioner, the court discussed the rules for assessing tax. Citing I.R.C. § 6501(a), the court first stated, the "general rule limiting the period during which a tax may be assessed provides that any assessment must be made within 3 years after the return for such tax is filed." *Id.* Very succinctly, the court drew the line between the general rule and the rule for

---

7. On October 1, 1984, Kenneth resigned his general partnership interest and became a limited partner.

8. The Tax Court did not definitively determine, based on the facts, whether the FPAA was issued

on December 15, 1987 or in January 1988. Such a determination would have been immaterial because the statute of limitations expired before either date.

partnership items: "The general rule of section 6501(a) does not apply, however, to income tax attributable to partnership items. The period for assessing any income tax attributable to partnership items (or affected items) for a partnership taxable year will not expire before 3 years after the partnership files its information return for the taxable year in question." *Id.* at 292 (citations omitted). The court relied on I.R.C. § 6229(a) for the period of limitations for partnership items and cited I.R.C. § 6501(n)(2) to support its conclusion that I.R.C. § 6501(a) does not apply to partnership items. Presumably, the court drew this inference from the language of I.R.C. § 6501(n)(2), which directs a partnership to section 6229 for an extension of the period of limitations.

### 4. *Wind Energy Technology Associates III v. Commissioner*

The primary issue in *Wind Energy Tech. Assocs. III v. Comm'r,* 94 T.C. 787, 788, 1990 WL 70792 (1990), was the validity of respondent's Notice of FPAA when respondent failed to meet the notice requirement of section 6223(d), which requires the IRS to mail notice of the beginning of an administrative proceeding at the partnership level to notice partners no later than 120 days before the actual FPAA is issued. Respondent mailed a notice of the beginning of an administrative proceeding to the partners of Wind Energy Technology Associates III ("Wind Energy") on April 7, 1989. On April 14, 1989, respondent mailed the partners an FPAA. *Id.* at 788.

With little debate or discussion, the Tax Court, citing *Barbados # 7 Ltd. v. Comm'r,* 92 T.C. 804, 808, 1989 WL 35567 (1989), acknowledged that, under I.R.C. § 6229(a), assessment of tax attributable to partnership items is subject to a three-year statute of

limitations. *Id.*[9] In a telling conclusion that appears to bolster defendant's position that section 6229(a) serves as the statute of limitations for tax assessment on partnership items, the court noted that respondent's motion for partial summary judgment "seeks a determination that the FPAA was validly issued within the 3–year limitations period of section 6229(a)." *Wind Energy Tech. Assocs. III,* 94 T.C. at 794. The court determined that the FPAA was not untimely under section 6223(d) and granted respondent's motion in finding that the FPAA adhered to the request period of limitations.[10]

### 5. *Boyd v. Commissioner*

Regal Laboratories, Ltd. ("Regal"), was a limited partnership that exploited various agricultural biotechnologies. *Boyd v. Comm'r,* 101 T.C. 365, 366, 1993 WL 452248 (1993). Petitioners invested $24,000.00 in Regal in 1983. Regal did not file a tax return for 1983; petitioners filed their 1983 federal income tax return on April 16, 1984, by which they claimed a $13,361.00 medical deduction and a $120,000.00 partnership loss. *Id.* at 367. Respondent issued a notice of deficiency on June 2, 1987 that disallowed the entirety of petitioners' claimed partnership loss. This notice was invalid under section 6501. Subsequently, respondent conducted an audit of Regal under TEFRA. On June 20, 1988, respondent issued a Notice of FPAA to Regal's TMP. Mr. Boyd[11] did not receive a copy of the FPAA or learn about the TEFRA partnership proceeding until February 6, 1991.[12] *Id.* at 368.

On June 7, 1991, as a result of the TEFRA audit of Regal, respondent issued a second notice of deficiency for 1983 that disallowed petitioners' $120,00.00 partnership deduction and $6,089.00 of their medical deduction. *Id.* The validity of the notice date of this defi-

---

**9.** The relevant text of *Barbados # 7* reads: "Section 6229(a) provides for a 3–year limitation period for the assessment of any tax attributable to a partnership item. The period for assessment may be extended with respect to all partners by agreement . . . ."

**10.** Although the specific date of filing was not given, presumably the date used for Wind Energy's filing for determining the statute of limitations period was April 15, 1986. *See Wind Ener-*

*gy Tech. Assocs. III,* 94 T.C. at 788; I.R.C. § 6229(a)(2).

**11.** At times the Tax Court distinguished between Mr. Boyd as "petitioner" and Mr. and Mrs. Boyd as "petitioners."

**12.** Based on his ownership of 1.2% of Regal's partnership, Mr. Boyd was a notice partner.

ciency was the primary issue before the Tax Court. The court directly spoke to the relationship between section 6501(a) and section 6229: In response to petitioners' argument that section 6501(a) barred the assessment of taxes relating to their Regal deduction, the court concisely stated that "assessment of tax relating to their Regal partnership deductions is governed by the TEFRA partnership provisions, not by the general deficiency procedures under which petitioners' first notice of deficiency for 1983 was issued." *Id.* at 369. The court further explained that the general assessment of income tax must "generally be assessed within the later of 3 years after the return is filed or the due date of the return," as under I.R.C. § 6501(a) and (b). In the instance of tax attributable to partnership items, which petitioners' loss would be labeled, section 6501(a) does not apply and such partnership items must be assessed pursuant to section 6229(a). *Boyd*, 101 T.C. at 370 (citing *Cambridge Research & Dev. Group*, 97 T.C. at 292).

Based on its analysis of the facts, the court determined that the second deficiency notice was timely because petitioners did not elect to be subject to the partnership proceeding involving Regal.[13] As a consequence, their $120,000.00 deduction for Regal's loss was converted into a nonpartnership item when respondent mailed the notice of the proceeding to Mr. Boyd on February 6, 1991. *Id.* at 370; *see* I.R.C. § 6223(e)(2)(B) (when partnership proceeding is final, partner may have decision apply to him; failure to elect such application converts partnership items of partner for taxable year of proceeding into nonpartnership items). Under I.R.C. § 6229(f)(1), respondent must assess tax attributable to converted nonpartnership items within one year of the date of conversion. Based on the issuance of the notice of proceeding on February 6, 1991, the IRS had until February 6, 1992 to issue the notice of deficiency. Hence, the court found that the notice issued on June 7, 1991, satisfied section 6229(f) and determined that the notice was timely. *Id.* at 370–71.

### 6. *Rhone–Poulenc Surfactants & Specialties, L.P. v. Commissioner*

#### 1) *The Rhone–Poulenc majority*

Despite the apparent support for plaintiff's position in the above cases, plaintiff faces an obstacle to its contention that well-settled law directs that I.R.C. § 6229(a) serve as the statute of limitations period for partnership items. Defendant relies upon a 2000 United States Tax Court opinion that restates that court's understanding of section 6229. The court held that "section 6229 extends the section 6501 period [of limitations] with respect to tax attributable to partnership items or affected items." *Rhone–Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 542, 2000 WL 863142 (2000). This represents, obviously, a different statutory interpretation than presuming that section 6229 is a separate statute of limitations unrelated to section 6501 with regard to partnership items.

Petitioner was a corporate partner in the Rhone–Poulenc partnership. A transfer of property took place between petitioner and another subsidiary, and the property at issue concerned "assets related to businesses carried on by those two subsidiaries." *Id.* at 536. The partnership described "the transfer as a contribution of property to the partnership in exchange for an interest in the partnership[,]" whereas respondent considered the transfer a sale. *Id.* The partnership filed its 1990 income tax return on either September 15 or 17, 1991, *id.* at 537; on September 12, 1997, the IRS issued a Notice of FPAA to petitioner for the 1990 taxable year. *Id.* at 536. The parties did not dispute that the case involved at least one partnership item. *Id.*

Much like the arguments in the case at bar, a primary issue for resolution in *Rhone–Poulenc* was the interplay between I.R.C. § 6229 and I.R.C. § 6501. Petitioner argued that respondent's assessment of tax with regard to the FPAA was barred by the three-year period of limitations found in I.R.C. § 6229(a). *Id.* at 537–38. In this regard

---

**13.** On July 23, 1990, the Tax Court entered a decision in which a notice partner of Regal conceded a $10 million research and development expense deduction at issue. *Boyd*, 101 T.C. at 368.

petitioner claimed that section 6501(a) is not the correct period of limitations for tax attributable to any partnership item, *id.*, and that section 6229(a) constitutes an independent, stand-alone period of limitations distinct from the section 6501(a) time period, *id.* at 537. Not surprisingly, respondent disagreed with the separate categorization of sections 6229 and 6501, arguing that section 6229(a) serves as an " 'add on' that, in some circumstances, extends the period prescribed by section 6501[a] but would never subtract from that period." *Id.* Respondent further contended that, per I.R.C. § 6501(e)(1)(A), the general period of limitations under section 6501(a) actually was extended to six years because petitioner's return constituted a substantial omission of income due to petitioner's failure to report the gains attributable to the transfer. *Id.* at 538.

A majority of Tax Court judges concluded that I.R.C. § 6501(a) provided the statute of limitations for any tax imposed under the I.R.C. *Id.* at 551. They emphasized that "[s]ection 6501 contains no exception for deficiencies attributable to partnership items." *Id.* In reaching its conclusion that sections 6229 and 6501 contain alternative periods for assessing tax on partnership items and that, therefore, the later-expiring period governs a particular case, *id.* at 540–41, the court presented a variety of considerations. First, it determined that the language of section 6501 unequivocally states the period of limitations with respect to "*any* tax imposed by this title." I.R.C. § 6501(a) (emphasis added). Comparatively, while section 6501 provides a maximum time limit for the assessment of any tax, section 6229 provides a minimum period of time for assessment of tax attributable to partnership items. *Rhone–Poulenc,* 114 T.C. at 542. In essence, the court's reading of the statutory sections rendered

section 6229 a complement to section 6501 because section 6229 can end before or after the time period stipulated in section 6501. *Id.*

The court also addressed petitioner's contention that TEFRA's partnership provisions and other provisions of the I.R.C. demonstrate that section 6229(a) serves as a separate, "stand-alone" statute of limitations for partnership items. *Id.* at 544. The court rejected this argument and restated that section 6229(a) merely creates a minimum time period for assessing adjustments attributable to partnership items. The court went on to distinguish section 6229(a)'s language of "shall not expire before" from other statute of limitations provisions, and determined that if Congress had intended to establish an entirely separate statute of limitations under section 6229, it would have mirrored the statute of limitations language of section 6501(a).[14] *Id.* at 545.

Additionally, based on the notion that superfluous interpretations of statutes should be avoided and its clear-language reading of the statute, the court dismissed petitioner's contentions that sections 6229(c)(1)(A) and 6229(b)(3) are superfluous. Petitioners argued that, if section 6501 controls the statute of limitations for partnership items, section 6229(c)(1)(A) is superfluous "because section 6501(c)(1) contains an identical unlimited assessment period."[15] *Id.* at 547. In an interesting distinction, the court determined that section 6501(c)(1) casts a broad net for all fraudulent tax activity and therefore would apply to a partner who filed a fraudulent individual or corporate return, even if the partnership return was not fraudulent. On the other hand, the court read section 6229(c)(1) as specifically addressing partner-

---

**14.** The court reasoned that statutes of limitations with such language have not displaced another period of limitations. *Rhone–Poulenc,* 114 T.C. at 545.

**15.** I.R.C. § 6229(c)(1) provides:
If any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item—
(A) in the case of partners so signing ... any tax imposed by subtitle A which is attribut-

able to any partnership item (or affected item) for the partnership's taxable year to which the return relates may be assessed at any time[.]
I.R.C. § 6501(c)(1) creates the same assessment period: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

ship returns and determined that it extended the period of limitations for partners if a partner intentionally participated or signed a fraudulent partnership return. *Id.* at 547–48. The court considered the relationship between these two subsections only a "possible limited overlap." *Id.* at 549. Similarly, in its rejection of petitioner's argument that section 6229(b)(3) is superfluous in relation to section 6501(c)(4),[16] the court concluded that section 6229(b)(3) added the requirement of an explicit mention of partnership items in the agreement. *Id.* at 550.

Finally, the court rebuffed petitioner's policy arguments through discussion of section 6229(c)(3), which provides that tax attributable to partnership items may be assessed at any time when a partnership return is not filed. *Id.* at 550. Section 6501(c)(3) stops the period for assessment for nonfilers. The court determined that section 6229 provides no similar provision for partners who fail to file their own returns because the period of limitations from section 6501 "never begins to run for a nonfiling partner." *Id.*

### 2) *The Rhone–Poulenc dissents*

Judges Parr and Foley issued full dissents. Judge Parr cited a House conference report [17] that includes language that mirrors section 6229(a). *See* H.R.Rep. No. 97–760, at 606 (1982) ("The period for assessment with respect to partnership items (or affected items) for any partnership taxable year shall not expire before 3 years from the date of filing the partnership return or, if later, the last date prescribed for filing such return determined without extensions."). Based on this language, Judge Parr found it obvious that the period of limitations from section 6229(a) was "no more than the time that is the later of 3 years from the date that the partnership return was filed or the latest date prescribed for filing the partnership

return without extensions." *Rhone–Poulenc*, 114 T.C. at 565. Precedentially, Judge Parr cited prior Tax Court decisions that dominantly construed section 6229(a) as the limitations period for the assessment of partnership items. *Id.* at 565 (Parr, J., dissenting); *see Roberts,* 94 T.C. at 857 (citing section 6229(a) for the limitations period for issuing an FPAA for partnership returns in question); *Wind Energy Tech. Assocs. III,* 94 T.C. at 788 (1990) ("Section 6229(a) provides generally for a 3–year period of limitations for the assessment of tax attributable to partnership items."); *Barbados # 7,* 92 T.C. at 808 (1989) ("Section 6229(a) provides for a 3–year limitation period for the assessment of any tax attributable to a partnership item."). In response to the majority's reasoning in regard to the "overlap" between sections 6229(b)(2) and 6501(c)(4), Judge Parr reasoned that section 6501(c)(4)'s requirement that extension agreements specifically state that the extension is applicable to partnership items implies that section 6501(c)(4) is not generally applicable to partnership items. *Rhone–Poulenc*, 114 T.C. at 567.

Judge Foley, in dissent, challenged the majority's characterization that the statutory scheme under review as " 'distressingly complex' " and " 'not a model of clarity.' " *Id.* at 569. Instead, he relied on the plain meaning of the statute and followed the defined period of limitations as stated in section 6229(a). *Id.* He questioned the majority's use of strict statutory interpretation in favor of the Government, in essence asserting that the majority went too far in attempting to reconcile the relationship between the sections in question. Judge Foley emphasized the prudence of interpreting section 6229(a) as the only assessment period for TEFRA partnership items. By adhering to such an interpretation, "ad-

---

**16.** I.R.C. § 6501(c)(4) allows for an extension of the period of limitations by agreement. I.R.C. § 6229(b)(3) applies any agreement under I.R.C. § 6501(c)(4) to section 6229(a) only if the agreement specifically states that it applies to tax attributable to partnership items.

**17.** Although resort to legislative history should be resisted if a statute's meaning is clear on its face, *see Clary v. United States,* 333 F.3d 1345,

1348 (Fed.Cir.2003) ("To interpret a statute we first look to the statutory language and then to the legislative history if the statutory language is unclear."), Judge Parr reinforced her plain-meaning interpretation with the cited legislative history, which, in her view, "made clear" that section 6229(a) "provides the period of limitations for partnership items." *Rhone–Poulenc,* 114 T.C. at 565.

justments in the tax treatment of partnership items [will occur] in one proceeding at the partnership level, rather than in separate proceedings with the partners." *Id.* at 569.

### 7. *Callaway v. Commissioner*

In *Callaway v. Comm'r*, 231 F.3d 106 (2d Cir.2000), the court considered whether a wife's share of her deceased husband's partnership assets converted to nonpartnership assets at the same time as her deceased husband's share of partnership assets converted to nonpartnership assets. The court ultimately ruled that the wife's partnership assets converted to nonpartnership assets at the same time as the deceased husband's. Additionally, plaintiff claimed the statute of limitations on assessment of these converted partnership items had expired, and the court agreed.

In order to reach this conclusion, the court analyzed I.R.C. § 6229(f) and I.R.C. § 6501(d). Section 6229(f) requires that, if certain events cause a partnership item to become a nonpartnership item, the period for assessments on that item "shall not expire before the date which is 1 year after the date on which the items become nonpartnership items." I.R.C. § 6229(f). Section 6501(d), on the other hand, requires assessment be made within a maximum of three years if a prompt assessment properly is requested under certain procedures. The husband's estate had requested a prompt assessment on an item that had gone from partnership to nonpartnership status, thus triggering both provisions. The court held that section 6501(d) applies to assessments attributable to partnership items. Therefore, section 6501(d) was inapplicable if the items had converted and the time under section 6229(f) had expired. The court construed I.R.C. § 6229(a) as "supersed[ing] the individual partner's general three-year statute of limitations" of I.R.C. § 6501(a). *Callaway*, 231 F.3d at 110, 121.

### 8. *Andantech L.L.C. v. Commissioner*

Subsequently, in a complex matter involving a partnership that reported losses on its federal tax return based on the acceleration of income from leases on personal property which was then paid to others, the D.C. Circuit affirmed the Tax Court's understanding of the relationship between I.R.C. § 6501 and I.R.C. § 6229(a). *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 973, 976 (D.C.Cir. 2003).

The D.C. Circuit approved of the Tax Court's reason for finding that section 6501 serves as the general period of limitations for assessing any tax and that section 6229(a) provides a minimum period that may extend section 6501 for assessing tax attributable to partnership items. *Id.* at 976. The court focused on the language of the statutory provisions to affirm the Tax Court: First, the court agreed that the plain meaning of section 6501 emphasizes that it refers to all taxes applicable under the I.R.C. *Id.* Comparatively, section 6229(a) references section 6501 through its "[e]xcept as otherwise provided in this section" language. *Id.* 976–77. Further, the court approved of the Government's argument that the broad scope of section 6501, combined with the phrase "shall not expire" from section 6229(a), leads to the conclusion that section 6229 is not a separate, independent statute of limitations.[18] *Id.* at 977. This language dictates a minimum period that may extend section 6501's period of limitations in the case of partnership items, but it does not create an independent statute of limitations. *Id.* Finally, the court was satisfied that the Tax Court's reasoning was "reasonable, persuasive, and ultimately convincing" in the determination that section 6501 provides the statute of limitations for all assessments under the I.R.C. and that section 6229(a) may be used to extend that period of limitations. *Id.*

### 9. *Weiner v. United States*

In *Weiner v. United States*, 389 F.3d 152 (5th Cir.2004), plaintiffs sought a refund of partnership taxes paid to the government on the basis that the statute of limitations had run on the period of assessment. Key to plaintiffs' argument was whether "the FPAA

---

**18.** This understanding of the statutes would "ensure that the IRS could assess a partnership tax against a late or non-filing partner." *Andantech L.L.C.*, 331 F.3d at 977.

statute of limitations, found in § 6229(a), is ... a 'partnership item'" for the purposes of I.R.C. § 7422(h). *Id.* at 156. If the FPAA was a partnership item, the refund claim jurisdictionally would be barred by section 7422(h). If it was not a partnership item, the suit could proceed. Ultimately the court held that the section 6229(a) limitation was a partnership item and thus jurisdictionally was barred from consideration in the refund suit.

In a section entitled "Statutory Background," the court stated that "[t]he IRS is given three years from the later of (1) the date a partnership return is due, or (2) the date the partnership return is filed, to issue an FPAA." *Weiner,* 389 F.3d at 154–55. This language appears to presume that section 6229(a) is a period of limitations. However, such a decision was not necessary to the court's holding-whether the applicable period was section 6501 as extended by section 6229 or section 6229 alone made no difference to resolving the critical issue of whether the FPAA limitation was a partnership item or a non-partnership item. Furthermore, the interplay between sections 6229 and 6501 was not in dispute in *Weiner,* and it was not analyzed by the court.

## IV. *Plain meaning of the statute*

### 1. *Plain meaning and canons of construction*

■ Statutory interpretation begins with the language, or plain meaning, of the statute. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* —— U.S. ——, ——, 125 S.Ct. 2611, 2626, 162 L.Ed.2d 502 (2005); *Norfolk Dredging Co., Inc., v. United States,* 375 F.3d 1106, 1110 (Fed.Cir.2004) (citing

*Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)). However, "[w]hether or not words of a statute are clear is itself not always clear." *Tex. State Comm'n for the Blind v. United States,* 796 F.2d 400, 406 (Fed.Cir.1986) (en banc). In such a situation, certain rules called canons of construction are useful in extracting the plain meaning from the statute. These canons are not binding, mandatory rules; instead, they serve as "guides that 'need not be conclusive.'" *Chickasaw Nation v. United States,* 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (quoting *Circuit City Stores, Inc., v. Adams,* 532 U.S. 105, 115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). Such guides "are designed to help judges determine the Legislature's intent as embodied in particular statutory language." *Id.*

■ The plain meaning of a statute comes from its "text and structure." *Norfolk Dredging Co.,* 375 F.3d at 1110. This meaning "of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Although the statutory provision at issue must be read within the context of the entire statute,[19] *see K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100

19. Notably, this canon of construction is especially relevant to the pending matter, as two statutory provisions, I.R.C. §§ 6229(a) and 6501(a), form the basis of contention between the parties. This, the "cardinal rule" of statutory construction, *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), instructs a court to not constrain its analysis to a select portion of the statute, "but look to the provisions of the whole law, and to its object and policy," *United States v. Heirs of Boisdore's,* 49 U.S. 113, 122, 8 How. 113, 12 L.Ed. 1009 (1850). Companion to this canon is the rule that effect be given to every element of a statute so

that provisions do not negate each other and words or other elements are not excessive or insignificant. Or put metaphorically, "'Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used ....'" *Shell Oil Co. v. Iowa Dep't of Revenue,* 488 U.S. 19, 25 n. 6, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988) (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941)); *see also United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955).

L.Ed.2d 313 (1988), it also should be read in "its contemporary legal context," *see Cannon v. Univ. of Chicago,* 441 U.S. 677, 698–99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there[,]" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

■ If examination of the statute in light of these rules shows that "the language is clear and fits the case, the plain meaning of the statute generally will be regarded as conclusive." *Norfolk Dredging Co.,* 375 F.3d at 1110. Once plain meaning is ascertained, it is inappropriate for courts to attempt to interpret a statutory provision.

However, it is not always possible to ascertain plain meaning; the wording of a statute might be ambiguous. "Ambiguity in a statute ... normally means two or more alternative readings, all having some claim to respect and none leading to absurd results." *Hart v. United States,* 218 Ct.Cl. 212, 585 F.2d 1025, 1029 (1978). In such cases, a court must "resort to legislative history and other extrinsic aids." *Id.*

### 2. Presumptions and their use

Plaintiff and defendant cite contrary rules of construction that they argue should be used to resolve any remaining ambiguity in their favor. Plaintiff presents a rule of construction that presumes that Congress intended remaining ambiguities in a tax collection statute to be construed in favor of the taxpayer. Defendant presents a rule of construction that presumes that Congress intended remaining ambiguities in a tax collection statute of limitations to be construed in favor of the Government. Plaintiff and defendant agree that these cross-presumptions come into play only if the statute is ambiguous. However, neither party directly addressed the issue of whether these presumptions come into play before or after the legislative history is examined.

■ The court concludes that the inquiry should proceed in the following order. First, a statute should be given its plain meaning, if at all possible. *See, e.g., Allapat-*

*tah Servs.,* 125 S.Ct. at 2626 ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); *Caminetti,* 242 U.S. at 485, 37 S.Ct. 192 ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms."). However, if a statute has two or more plausible alternative readings and thus is deemed ambiguous, the next step is for the court to look to the legislative history. *See Hart,* 585 F.2d at 1029 (holding that, if statute is ambiguous, court may "resort to legislative history and other extrinsic aids."); *see also Chevron, U.S.A. Inc.,* 467 U.S. at 842–43, 104 S.Ct. 2778 (indicating that purpose of court is to give effect to intent of Congress). Reliable legislative history, which is clear and unambiguous, should be regarded as a better indicator of Congress's intentions than a presumption. Thus, in the case of an ambiguous statute, the legislative history should be examined before a presumption is applied. *See Chickasaw Nation,* 534 U.S. at 94, 122 S.Ct. 528 (holding that canons of construction are "designed to help judges determine the Legislature's intent as embodied in particular statutory language"). However, if the legislative history is equivocal and does constitute a reliable indicator of the intentions of Congress, any remaining ambiguities should be resolved by resort to any applicable presumption.

Although the court recognizes that other courts have employed presumptions as part of the plain-meaning analysis, the court deems that it is appropriate to use such a presumption after consulting the legislative history. In a hypothetical case in which a tax statute of limitations was ambiguous, but the legislative history was crystal clear in favor of the taxpayer, the will of Congress would be thwarted by reference to a presumption that foreclosed consulting the legislative history. If the will of Congress is to be implemented, it makes more sense to divine the will of Congress from its own words (if the source is authorative and the meaning clear), rather than a judge-made presumption.

In this case, in particular, the rule construing ambiguities in tax statutes of limitations in favor of the Government would mean that the legislative history should not be examined. Out of an abundance of caution, therefore, the court would prefer to engage in this analysis. Because of the ultimate disposition of the case-a ruling in favor of defendant based upon a presumption in the form of the rule of construction that favors the Government-it proves of no significance in the instant case if the rule of construction is considered before or after the legislative history. In either case, judgment would be for defendant.

Therefore, the cross-presumptions-in favor of the taxpayer and in favor of the Government-will not be considered as part of the plain-language analysis. Instead, they come into play after the legislative history is examined.

### 3. *Analysis of plain meaning and possible ambiguities*

■ The meaning of section 6229 must first be sought in its language, as construed in light of the context of the entire statute, including section 6501 and the various subprovisions of the two sections. *See, e.g., K Mart Corp.*, 486 U.S. at 291, 108 S.Ct. 1811. If the meaning of the statute is clear, that is as far as the court may go. *Norfolk Dredging Co.*, 375 F.3d at 1110. However, the court finds in the instant case that the statute has "two or more alternative readings, all having some claim to respect and none leading to absurd results." *Hart*, 585 F.2d at 1029. It is therefore ambiguous, and the court is required to examine extrinsic materials to determine Congress's intent.[20] The parties' arguments will be examined in detail.

### 1) *The language of section 6229(a) and section 6501(a)*

The cause of the uncertainty in the interpretation of section 6229 is at its heart twofold. First, I.R.C. § 6229 titles itself "[p]eriod of limitations" and refers to periods of limitation throughout. However, in order to have the stature of a separate statute of limitations, section 6229 must somehow trump I.R.C. § 6501, which by its terms applies to "any tax imposed by this title." Section 6229 does not explicitly state that it is an exception to section 6501's more general rule. Second, while section 6229(a) styles itself a period of limitations, it does not use language traditionally associated with statutes of limitations. Instead uses the phrase "shall not expire before." I.R.C. § 6229(a). This leaves both sides of the question with respectable arguments in their favor.[21]

First, plaintiff claims the entire issue is settled by the first seven words of section 6229, when it says, "Except as otherwise provided in this section ...." I.R.C. § 6229(a). Plaintiff argues that this phrase confines the reader to section 6229 when interpreting the limitation provision and thereby excludes from consideration section 6501. Plaintiff argues that Congress "could not have focused with greater specificity here." Pl.'s Br. filed Jan. 4, 2005, at 20. The court strongly disagrees. If Congress had wished to create a clear exception to section 6501, it could have mentioned it by name or used a phrase such as "[n]onwithstanding any provision of law imposing restrictions on the assessment and collection of

---

**20.** Although defendant argues for the court to rule in its favor on plain meaning, it has admitted that the two different interpretations at issue here have been "kicked around and debated for decades" within the Justice Department, and "you can argue both sides." Transcript of Proceedings, *AD Global Fund v. United States*, No. 04–336T, at 59 (Fed.Cl. May 10, 2005) ("Tr."). Furthermore, the Tax Court, while ruling in favor of the Government based on plain language, termed the TEFRA provisions at issue here "distressingly complex and confusing" and "not a model of clarity." *Rhone–Poulenc*, 114 T.C. at 540, 552. Confusion and debate do not necessarily create an ambiguity, and the court does not rely upon this language in determining the existence of one. However, the Tax Court acknowledged symptoms that indicate something is amiss with section 6229, and, if an ambiguity is not the disease, the court cannot identify it.

**21.** The court understands that the nature of the legislative process forces Congress to spend far less time writing a single bit of statute than the court may spend dissecting it. Be that as it may, Congress did not do an adequate job in drafting this portion of the statute, and the court would welcome its final resolution by Congress.

deficiencies," as it has elsewhere for that purpose. *See* I.R.C. § 7485(a) (2000). The court agrees with defendant that the "except as otherwise provided in this section" language does not support plaintiff's cause. If section 6229(a) is read to operate as an extension, as defendant argues, the "except as otherwise provided" language would refer internally to circumstances within section 6229 that modify this extension. Plaintiff overreaches when it claims that seven words may answer such a complicated question.

Likewise, defendant contends that the issue is settled by I.R.C. § 6501(a)'s statement that it applies to "any tax imposed by this title." But this is also too simple. Plaintiff contends that section 6229(a) was intended as an exception to section 6501(a). If plaintiff's interpretation is correct, it does not matter if section 6501(a) announces its application to all taxes imposed within the title, because · section 6229(a) would limit its reach. Were section 6229(a) intended as an exception, the "basic principle of statutory construction that a specific statute ... controls over a general provision," *HCSC–Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981), would elevate section 6229 over section 6501. Therefore, defendant's argument also assumes the result it is trying to prove. The statute must be examined in more detail to determine if it was intended to provide a separate statute of limitations for partnership items as an exception to section 6501.

Plaintiff argues that the title of section 6229, "Period of limitations for making assessments," should resolve the issue in its favor, *i.e.,* Congress made plain that it enacted a period of limitations rather than an extension. The court does not agree that this approach is conclusive. While plaintiff's reading is simple and perhaps more likely, defendant's interpretation of the caption is also viable. Even if section 6229 is an extension of time-this section concerns the "period of limitations for making assessments," after all-it might extend that period of limitations. Because two possible readings of this title are apparent, it is ambiguous.

Plaintiff also contends that, because section 6229 contains a list of exceptions to the period of limitations and does not mention

section 6501, under the maxim *expressio unis est exclusio alterius* the damage must not have meant to exclude section 6501 as an exception. Again, the court disagrees. If section 6229(a) is read to incorporate by reference the period of section 6501(a), no need would be present for an exception excluding section 6501. Plaintiff's argument is bootstrapping.

Plaintiff contends that the phrase "shall not expire before" is used elsewhere to denote separate periods of limitations. It cites I.R.C. § 1033(a)(2)(C) ("[The] statutory period for assessment of any deficiency ... shall not expire prior to the expiration of 3 years from the date the Secretary is notified by the taxpayer ....") and I.R.C. § 2032A(f) ("Statute of limitations.—If qualified real property is disposed of or ceases to be used for a qualified use, then—(1) the statutory period for the assessment of any additional tax under subsection (c) attributable to such disposition or cessation shall not expire before the expiration of 3 years from the date the Secretary is notified ....") as creating separate statutes of limitations that supersede the general rule of section 6501(a). In plaintiff's view Congress's use of the phrase elsewhere in the I.R.C. to create a separate period of limitations supports the proposition that Congress did the same through section 6229(a). Plaintiff cites the Tax Court's treatment of these two provisions to support its interpretation. *Vaira v. Comm'r,* 52 T.C. 986, 1003, 1969 WL 1731 (1969) (interpreting section 1033(a)(2)(C)), and *Stovall v. Comm'r,* 101 T.C. 140, 1993 WL 283325 (1993) (interpreting section 2032A(f)).

Defendant concedes that the above provisions might "in a technically linguistic sense ... be considered 'separate' periods of limitation." Def.'s Br. filed Jan. 31, 2005, at 16 n. 11. Defendant distinguishes *Stovall* and *Vaira* on the ground that sections 1033(a)(2)(C) and 2032A(f) were held to be "separate" periods of limitations, but not "exclusive" periods. Def.'s Br. filed Jan. 31, 2005, at 16 n. 11. Instead, defendant shows how these statutes can contemplate an additional period of assessment that can occur even if the time period in I.R.C. § 6501(a) has expired. Section 2032A(f) contains a

triggering event: the disposition of certain qualified real property or its conversion to an unqualified use. When that event occurs, the "shall not expire before" language of section 2032A(f) extends the period of assessment, even if the section 6501(a) time limit has expired. However, if the triggering event does not occur, section 6501(a) applies in due course. This is certainly a "separate" period of limitations, but is not exclusive of section 6501(a). Much the same is true of section 1033(a)(2)(C) in the context of taxes on income from involuntary conversions of property, except that the triggering event is the notification of the Secretary regarding the purchase of replacement property. Defendant also cites two other statutes in which Congress uses the "shall not expire before" language as a minimum or extended period. I.R.C. §§ 183(e)(4), 453(e)(8). It is apparently undisputed that both create an extended period of limitations with the "shall not expire before" language.[22]

Plaintiff has not cited to the court's satisfaction any provision in which Congress uses the "shall not expire before" language to trump section 6501(a)'s more general rule on the time limit of assessments. When Congress uses this phrase in the I.R.C., it is usually language that indicates an extension of the basic rule of section 6501(a). However, the fact that Congress usually uses this phrase to mean an extension does not conclusively establish that it so intended in section 6229.

### 2) *Internal consistency*

The meaning of section § 6229(a) cannot be determined simply by comparing its language to the language of section 6501(a). Thus, the court must proceed to read the statute in the context of its other provisions and subprovisions.

Plaintiff points out that there are other references within section 6229(a) to the period specified or described in section 6229(a). *See, e.g.,* I.R.C. § 6229(b)(1),[23] (b)(3),[24] (d).[25] Defendant counters that all references to a period in subsection (a) refer to the language "the period for assessing any tax imposed by subtitle A" as extended by the extension provided for by the "shall not expire before" provision. *See* I.R.C. § 6229(a). In other words, defendant argues that references to section 6229(a)'s period are actually references to section 6501's limitation period, plus any time added by the possible extensions included within section 6229.

The court finds plaintiff's interpretation to be more likely. References to "extensions" and "suspensions" of a period "described" or "specified" in section 6229(a) read as if they are referring to a period actually described fully within the subsection. The only way a period could be described fully in the subsection is under plaintiff's interpretation of section 6229(a) as a poorly worded statute of limitations.

Defendant's interpretation-that the period described in section 6229(a) is actually the period described in section 6501(a), plus any extension within section 6229, is labyrinthine. However, despite the complicated nature of this reading, it is a plausible one. Congress could have made reference to the "period described in subsection (a)" as a shorthand method of describing the section 6501 period, as modified by section 6229. Nothing in the language itself conclusively proves otherwise. Thus, it is a reading that has "some claim to respect," *Hart,* 585 F.2d at 1028, and thus

---

**22.** In addition, the Tax Court has interpreted section 183(e)(4) to be an extension of section 6501(a). *See Crawford v. Comm'r,* 97 T.C. 302, 307, 1991 WL 174149 (1991).

**23.** "The period described in subsection (a) (including an extension period under this subsection) may be extended—(A) ... by agreement ... [of] such partner, and (B) ... by agreement entered into by the ... tax matters partner ...." I.R.C. § 6229(b)(1).

**24.** "Any agreement under section 6501(c)(4) shall apply with respect to the period described

in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items." I.R.C. § 6229(b)(3).

**25.** "If notice of a final partnership administrative adjustment ... is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended ...." I.R.C. § 6229(d).

would qualify the statute as ambiguous if it does not "lead[ ] to absurd results." *Id.*

Plaintiff and defendant go through the subprovisions of sections 6229 and 6501, attempting to conjure such "absurd results" from the interplay of the language. The court has considered each of these arguments, including those not explicitly mentioned here, and found them to be unpersuasive. Nothing is "absurd" about either reading; even after examining the subprovisions in more detail, ambiguity remains. Therefore, the court concludes that the statute is ambiguous. Two of these arguments, regarding sections 6229(b)(3) and 6229(b)(1)(B), will be set out in more detail.

First, plaintiff and amicus argue that defendant's reading of section 6229(a) cannot be correct because it renders section 6229(b)(3) meaningless. Section 6229(b)(3) provides that agreements pursuant to section 6501(c)(4) are only applicable to the period in section 6229(a) if they expressly provide that they govern partnership items. Plaintiff and amicus argue that, under the Government's reading, such an extension under 6501(c)(4) would never be necessary. One can only obtain an extension under section 6501(c)(4) if the three-year period of section 6501(a) is still open. If it is still open, one would not need an extension; and if it has closed, then the only extension available will be the one presented in section 6229(a). No coordination with 6501(c)(4) would ever be necessary.

However, the Tax Court majority in *Rhone–Poulenc* presented one possible interpretation of the provision that does not render it meaningless. 114 T.C. at 549. Once again, if one presumes that the reference within section 6229(b)(3) to the "period described in subsection (a)" refers to section 6501(a)'s period, plus the extension of section 6229(a), there is a plausible reading. In that case section 6229(b)(3) reads, in effect, that extension agreements pertaining to the three-year period provided in 6501(a) (as already possibly extended by section 6229(a)) are only operative if they explicitly apply to partnership-item taxes. Amicus deems this reading "ridiculous." Amicus Br. filed May 4, 2005, at 13. The reading is convoluted, but possible. While amicus is correct that

Congress could have said the same thing in a simpler way, or put the equivalent of section 6229(b)(3) elsewhere in section 6501 rather than in section 6229, if this case has proved anything it is that Congress does not always write its statutes in the most punctilious of language. The court must deal with what it is given; and what it is given is a subprovision that may be read in two different ways. Neither reading yields ridiculous results.

Second, amicus argues that the purpose of section 6229(b)(1)(B) would be defeated by defendant's interpretation of section 6229(a). This section reads in relevant part, "The period described in subsection (a) . . . may be extended . . . (B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner . . . ." I.R.C. § 6229(b)(1). Under defendant's interpretation, according to amicus, the audit period for some partners will be longer than others. Therefore, the TMP will not always be able to extend the assessment period for "all partners." Instead, he will only be able to extend it for those partners whose periods of assessment have been extended. Defendant does not respond to this argument. However, it appears unclear why amicus's contention would necessarily be a problem. It does not strike the court as "absurd" that a TMP will be able to extend the assessment provisions only for those who have fallen under the section 6229(a) extension. It also does not necessarily seem absurd that some partners occasionally will be treated unequally as a result.

Therefore, the court sees no absurdities in either reading of section 6229(a). Both readings are plausible, and thus the statute is ambiguous under the *Hart* standard. Its plain meaning cannot be determined by reference to the text alone.

## V.  *Legislative history*

1.  *The use and weight of legislative history*

■  If a statute remains ambiguous even after consideration of its plain meaning, a court may rely on legislative history to interpret the meaning of the ambiguous terms. *Clary v. United States*, 333 F.3d 1345, 1348

(Fed.Cir.2003); *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir. 1989); *Martin J. Simko Constr., Inc. v. United States,* 852 F.2d 540, 542–43 (Fed.Cir. 1988); *Hart,* 585 F.2d at 1029. However, the Supreme Court has counseled caution when examining legislative history, as it is often "murky, ambiguous, and contradictory." *Allapattah Servs.,* 125 S.Ct. at 2626–27. The Supreme Court emphasized: "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.*

■ Not all legislative history is entitled to equal regard. The Federal Circuit and the Supreme Court have accorded different sources different weights, based upon how closely the history generally reflects the collective understanding of the members of Congress who drafted and voted upon the legislation. *See, e.g., Allapattah Servs.,* 125 S.Ct. at 2626; *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *Zuber v. Allen,* 396 U.S. 168, 186, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). The most persuasive sort of legislative history are the reports from the committees that studied, drafted, and proposed the legislation. *Garcia,* 469 U.S. at 76, 105 S.Ct. 479 ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill . . . ."); *Zuber,* 396 U.S. at 186, 90 S.Ct. 314 ("A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation."). However, committee reports are "not decisive," but instead only "highly persuasive." *Bingham & Taylor Div., Va. Indus., Inc. v. United States,* 815 F.2d 1482, 1485 (Fed.Cir.1987).

Prior legislative history, such as previous versions of the same bill, is deemed less reliable than concurrent committee reports. The Supreme has held that "failed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute . . . .' " *United States v. Craft,* 535 U.S. 274, 287, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). The Court explained, " 'Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction . . . ." *Id.* (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)).

Additionally, subsequent legislative history is also less reliable than concurrent committee reports. In *Colt Indus., Inc. v. United States,* 880 F.2d 1311, 1313 (Fed.Cir.1989), the Federal Circuit was presented with a committee report by the 92nd Congress purporting to set out the intentions of the 91st Congress regarding a law passed by the latter. The court held that such "[s]ubsequent legislative history is worthy of little weight." *Id.* at 1313 n.**; *see also Jones v. United States,* 526 U.S. 227, 238, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress." (internal quotations omitted)); *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 34, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982) ("[I]t is the intent of the Congress that [enacted the provision], not the views of the subsequent Congress . . . that are controlling.").

Subsequent legislative history in the form of Blue Books, summaries of recently passed tax laws prepared by the staff of the Joint Committee on Internal Revenue Taxation, are given similarly restrained readings.[26] The Supreme Court has made use of Blue

---

**26.** By way of background, the court notes that Blue Books are prepared by the staff of the Joint Committee on Taxation for the purpose of "provid[ing] a single, comprehensive source of legislative history for major tax acts. . . ." Michael Livingston, *What's Blue and White and Not Quite As Good As A Committee Report: General Explanations and the Role of the "Subsequent" Tax*

*Legislative History,* 11 Am. J. Tax Pol'y 91, 98–101 (1994). They are "not signed by any member of Congress and [are] never approved (even by reference) by the full membership of either body . . . ." *Id.* at 101. For this reason they always appear as committee prints, rather than true congressional reports. *See id.* at 100–01.

Books in interpreting statutory provisions. *See Fed. Power Comm'n v. Memphis Light, Gas & Water Div.*, 411 U.S. 458, 472, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973) (describing Blue Book under consideration in that case as "compelling contemporary indication" of congressional intent). However, the Federal Circuit has ruled that, "[a]s a post-enactment explanation, the Blue Book interpretation is entitled to little weight." *Fed. Nat. Mortgage Ass'n v. United States*, 379 F.3d 1303, 1309 (Fed.Cir.2004).[27]

Statements of agency officials to Congress also have persuasive authority. In *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 788, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), the Supreme Court gave weight to an agency official's statement to Congress. The Court turned to legislative history in that case to aid in its interpretation of a jurisdictional statute. The legislative history contained letters and oral testimony to a subcommittee by an Office of Personnel Management director. These statements interpreted both the existing law and Congress's proposed changes. The Supreme Court specifically rejected the notion that the views of agency officials could not be considered, pronouncing that "while Congress's understanding of the enactment is of course our touchstone, in discerning what it was that Congress understood 'we necessarily attach great weight to agency representations to Congress when the administrators participated in drafting and directly made known their views to Congress in committee hearings.'" *Id.* (quoting *Vogel Fertilizer Co.*, 455 U.S. at 31, 102 S.Ct. 821 (internal quotations omitted) (giving agency determinations weight in interpretation of tax law statute)).

### 2. *Legislative history presented*

Plaintiff, defendant, and amicus have provided an impressive selection of legislative history regarding sections 6229 and 6501. This history stretches over more than twenty years, from 1976 to 1997. Because the court should assess the understanding of the enacting legislature-not prior or subsequent legislatures-chronology becomes important in the analysis of this legislative history.

The TEFRA was enacted in 1978 by the 95th Congress. Accordingly, legislative history from prior and subsequent Congresses is deemed less persuasive as evidence of the legislature's intent when enacting section 6229.

#### 1) *History prior to the enacting Congress*

Plaintiff contends that the 1982 TEFRA had its genesis in a proposal by the Treasury Department to Congress ("the Treasury proposal"). This Treasury proposal, captioned "The President's 1978 Tax Program," was submitted to the House Ways and Means Committee for consideration on January 30, 1978. Under the law at the time of the Treasury proposal, the IRS could not audit a partnership's assets at the partnership level. Instead, the IRS was required to audit each partner's individual tax return that contained a partnership item. The Treasury proposal argued that this procedure was inefficient for the IRS, because the IRS was forced to audit and litigate the same partnership items multiple times. Furthermore, relitigation of the same partnership item by different partners made it "impossible to obtain one final binding administrative determination of a tax issue arising from a partnership," which resulted in a "lack of uniformity and consistency" in how partners were treated. *The President's 1978 Tax Reduction and Reform Proposals: Hearings Before the House Comm. on Ways and Means*, 95th Cong. 282 (1978) (reprint

---

27. Other federal courts of appeal also treat the Blue Book with varying degrees of caution. See, e.g., *Flood v. United States*, 33 F.3d 1174, 1178 (9th Cir.1994) ("[T]he Blue Book is not properly characterized as legislative history because it was written after passage of the legislation and therefore did not inform the decisions of the members of Congress who voted in favor of the Act."); *Estate of Wallace v. Comm'r*, 965 F.2d 1038, 1050 n. 15 (11th Cir.1992) (utilizing the Blue Book as aid to understanding the statute, but according it "no weight as binding authority on legislative intent"); *McDonald v. Comm'r*, 764 F.2d 322, 336 n. 25 (5th Cir.1985) ("The Joint Committee is a staff committee, and its 'Explanation' was issued after the fact. Hence it does not directly represent the views of the legislators or an explanation available to them when acting on the bill. The Joint Committee's views, however, are entitled to great respect.").

of the President's 1978 Tax Program) (hereinafter *Hearings on President's 1978 Tax Proposal*, 95th Cong. 282 (1978)). Furthermore, the problem had been made more acute by the use of complex, multi-tiered partnerships as tax shelters. These complex partnerships sometimes contained thousands of partners and were impossible for the IRS to audit properly, because, in order to determine the partnership assets, the IRS was required to audit each individual partner. This task often was impossible for the IRS to accomplish during the statutory limitation period. The Treasury Department argued that the practical impossibility of detailed audits under current law led to "[partnership] shelter investors [not taking] the possibility of an extensive IRS audit seriously," and thus "highly creative and ... questionable" partnership tax positions by these partnerships were going unchallenged. *Id.* at 288.

The Treasury Department proposed to remedy this problem by allowing the IRS to make determinations for partnership income, distribution, and other partnership items at the partnership level that are conclusive for the partners. *Id.* at 289. More specifically to the instant case, the proposal also suggested that

> [t]he partnership level determination will be subject to the statute of limitations at the partnership level based upon the limitations rules now in effect generally.... Once the statute of limitations has run at the partnership level, the partnership's return becomes final, and there can be no adjustment of items on a partner's return attributable to the partnership.

*Id.*

The House Ways and Means Committee invited the Commissioner of the IRS, Jerome Kurtz, to explain the meaning of the proposal. As a witness before the Committee,

Commissioner Kurtz emphasized the need to make it easier for the IRS to audit large partnerships. Commissioner Kurtz testified that "the Service faces situations where the period of limitations on assessments for individual partners expires before the Service can obtain or locate the partnership return, complete the partnership audit, and follow the trail from the partnership to the taxpayers ...." *Id.* at 5829 (statement of Jerome Kurtz, Comm'r).[28] Commissioner Kurtz also was of the view that

> [a] separate statute of limitations on assessment would apply to partners with respect to partnership items. As a general rule, unless the partnership agreed to an extension of the period for adjustments, the Service would have 3 years from the later of the due date or actual date of filing of the partnership return to make adjustments at the partnership level.
>
> Once those adjustments became final, the Service generally would have 1 additional year to make assessments against partners resulting from the partnership adjustments.

*Id.* at 5832. Plaintiff argues that this testimony, combined with the written proposal, demonstrates that the Treasury Department advocated a separate statute of limitations on partnership returns that, presumably, became section 6229.

Defendant readily concedes that the Treasury proposal included a separate statute of limitations for partnership items. D.'s Br. filed Jan. 31, 2005, at 22; D's Br. filed June 6, 2005, at 6. Defendant even presents a bill that arguably embodied the Treasury proposal, H.R. 12078, 95th Cong., 2d Sess. (Apr. 12, 1978). This bill included a section that read, "Except as otherwise provided in this section the Secretary shall make a final administrative determination of partnership items by giving written notice thereof by certified or

---

**28.** It appears from the record that Commissioner Kurtz considered that a major factor slowing down the IRS's audits of partnerships was multiple litigation of the same or similar partnership issues. In response to questions by the Committee, the Commissioner said, "Each individual partner can, if he wishes, contest [a] finding [regarding a partnership item on the individual partner's return]. We have to settle or litigate that finding with each separate partner today. That is the problem." *Hearings on President's 1978 Tax Proposal*, 95th Cong. 282 (1978) (statement of Jerome Kurtz, Comm'r). Commissioner Kurtz was of the view that a single proceeding to determine partnership assets at the partnership level would help the IRS operate more efficiently.

registered mail at any time within 3 years after the partnership return was filed." *Id.* at § 245. Defendant notes that the "within 3 years" language is that of a statute of limitations. However, defendant points out that H.R. 12078–or the Treasury proposal in any other form-was not enacted into law by the 95th Congress. Defendant trumpets this rejection of the Treasury proposal as significant evidence that Congress did not want a separate statute of limitations on partnership items. Some doubt emerges that the Treasury proposal went over well even at the committee level. During Commissioner Kurtz's testimony to the House Ways and Means Committee, the following exchange occurred:

> Mr. [Barber B.] Conable [, Jr., Ranking Minority Member]. You say we should take it up with the Tax Policy people if we have reservations [about the proposal]? Would that be your suggestion?

> Mr. Kurtz. I do not disassociate myself from the proposal. It would solve many of our problems.

> Mr. Conable. It would solve problems but, I am not sure that is the way we want to solve problems here.

*Hearings on President's 1978 Tax Proposal,* 95th Cong. 282 (1978) (statement of Jerome Kurtz, Comm'r).[29]

Defendant goes on to note that, in fact, Congress enacted other legislation in 1978 dealing with the issue of partnership audits. Defendant argues that this legislation was the real source of the disputed "shall not expire before" language, which was, in that context, expressed as language of extension, not limitation. This legislation was Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763 (1978) ("the Revenue Act").[30] Much of this law was superseded four years later by

TEFRA. However, defendant advocates that the "shall not expire before" language, and its meaning, were retained in the analogous TEFRA provision. The analogous section, section 6501(*o*)(1), read, as follows: [31]

> (*o*) Special Rules for Partnership Items of Federally Registered Partnerships.—

> (1) In general.—In the case of any tax imposed by subtitle A with respect to any person, the period for assessing a deficiency attributable to any partnership item of a federally registered partnership shall not expire before the later of—

> > (A) the date which is 4 years after the date on which the partnership return of the federally registered partnership for the partnership taxable year in which the item arose was filed (or, later, if the date prescribed for filing the return), or

> > (B) if the name or address of such person does not appear on the partnership return, the date which is 1 year after the date on which such information is furnished to the Secretary in such manner and at such place as he may prescribe by regulations.

Technical Corrections Act of 1979, Pub.L. No. 96–222, § 102(a)(2)(A), 94 Stat. 194 (1980).

Defendant contends that the placement of this subsection in section 6501 demonstrates that Congress intended it to extend the time period set out in section 6501(a), rather than supersede it. Defendant bolsters its interpretation of former section 6501(*o*)(1) with language from the relevant House Ways and Means Committee Report and the Conference Committee Report. H.R.Rep. No. 95–1445 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7046; H.R. Conf. Rep. No. 95–1800 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7198. The

---

**29.** Plaintiff did not include this page of Commissioner Kurtz's testimony in the testimony that it provided to the court. Although plaintiff's entire exercise of delving into "what was known" by the 95th Congress may lack relevance in interpreting a bill passed by the 97th Congress, the doubts of the Ranking Minority Member of the House Ways and Means Committee concerning the proposal certainly should be considered apiece with the other information.

**30.** This legislation was reported out of the House Ways and Means Committee on August 4, 1978, almost four months after Commissioner Kurtz's testimony to the Committee. Therefore, the Committee presumably was aware of the Treasury proposal at the time.

**31.** This section was originally codified as section 6501(q), but was re-designated 6501(*o*) in a technical corrections bill passed in 1980. *See* Technical Corrections Act of 1979, Pub.L. No. 96–222, § 102(a)(2)(A), 94 Stat. 194 (1980).

House Ways and Means Committee Report explained the new provision, as follows:

> The bill amends Code sections 6501 and 6511 to extend the period of time in which assessments of deficiencies and claims for refund of tax attributable to "partnership items" may be made. These special periods of limitation apply only to partnership items that are attributable to "federally registered partnerships" ....

> These special periods of limitation for assessments or claims for refund of taxes attributable to partnership items are in addition to, and not a replacement of, the periods of limitations provided in present law.

H.R.Rep. No. 95–1445, at 76–77 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7046, 7111–12. The Committee expanded upon this in a footnote:

> Thus, for example, if a partnership with a taxable year ending January 31, 1980 files its return by the May 15, 1980 due date, these special rules provide that the Service may assess deficiencies with respect to partnership items through May 15, 1984. However, if a partner of that partnership files his calendar year 1980 income tax return (which is the return on which he would report these partnership items) by an extended due date of June 15, 1981, the Service may assess deficiencies attributable to any item in his return, including partnership items, through June 15, 1984 under present law period of limitation rules.

*Id.* at 77 n. 3. The Committee cited the IRS's difficulty in auditing large partnerships as its reason for this new provision. In addition, when the House version of the legislation was reconciled with the Senate version, the Conference Committee adopted the House version of the provision with minor change. The Conference Report summarized the House provision as "extend[ing] generally to 4 years the period of time in which assessments of deficiencies ... of tax attributable to partnership items may be made." H.R. Conf. Rep. No. 95–1800, at 221 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7198. The report also explained that "[t]he 4–year period

of limitations under the House bill begins to run on the date ... of the partnership information return ...." *Id.* Furthermore, after Pub.L. No. 95–600 was enacted, the Joint Committee on Taxation issued a report explaining the new law in almost the same manner as the House Ways and Means Committee Report.

Defendant argues these Committee Reports prove that the original meaning of the "shall not expire before" language was to provide an extension, rather than a separate statute of limitations. Defendant argues Congress intended to retain this same meaning when TEFRA repealed section 6501(*o*) and enacted section 6229 in its stead. Plaintiff counters that the act of repealing section 6501(*o*), and its replacement in section 6229 rather than 6501, is strong evidence of congressional intent to discard the old meaning of the phrase and to enact a new provision with a separate partnership-related statute of limitations.

Plaintiff points to an article published by the American Bar Association (the "ABA") in 1979, which specifically urged the repeal of section 6501(*o*) of the Revenue Act of 1978 and the introduction, instead, of a "separate statute of limitations ... that would apply to returns filed by partnerships." *Section of Taxation Proposal as to Audit of Partnerships*, 32 Tax Law. 551, 555 (1979) (resulting from the work of the Ad Hoc Committee of the Section of Taxation of the American Bar Association). The ABA article proposed language for this separate statute of limitations that included the phrase "should not expire before." *Id.* at 555. Plaintiff identifies this as the source of the disputed language of section 6229. Defendant counters that Congress had used the "shall not expire before" language previously, in the Revenue Act of 1978, and that the earlier act was the true source of the disputed language.

The record does not indicate that Congress considered the 1979 article when drafting the 1982 TEFRA-indeed, no evidence presented to the court supports the inference that the article was sent to Congress, only that it was published in the Tax Lawyer.[32]

**32.** Given that plaintiff has presented no direct    evidence that Congress even possessed the arti-

### 2) *History during the enacting Congress*

TEFRA was enacted by the 97th Congress on September 3, 1982. Both plaintiff and defendant provide legislative history from that year. First, plaintiff presents an American Law Institute ("ALI") report suggesting a structure for partnership audits. This ALI report states that it would "apply the basic statute-of-limitation rules under present law to the partnership as an entity," and that "[t]hese would be the exclusive rules governing partnership items." *Federal Income Tax Project Subchapter K, Proposals on the Taxation of Partners* 394, 497 (American Law Institute 1984) (adopted by the ALI on May 20, 1982). The court notes that, much like the ABA article, the record includes no evidence that Congress received or considered this report.[33]

Next, plaintiff provides a cluster of legislative history centering around H.R. 6300, 97th Cong. (2d Sess.1982). H.R. 6300 was a multi-part tax bill that was considered by the House Ways and Means Committee in rough contemporaneity with the TEFRA legislation. Plaintiff contends that H.R. 6300—and by extension its legislative history, such as

the testimony regarding the bill at the Committee Hearing—was incorporated into the TEFRA legislation during the Conference Committee.[34] Although plaintiff provides no evidence this adoption occurred, the court has located a statement by the Conference Committee adopting the partnership provisions of H.R. 6300 into the Conference Report. It states:

> *Partnership Audits*—The conferees agreed to include the provisions of H.R. 6300, with technical and other minor modifications, establishing audit procedures at the partnership level and to permit, under regulations, application of similar principles to partnership returns under the windfall profits tax to permit a partnership to file the windfall profit tax return for its partners.

House Comm. on Ways and Means, *Compilation of Conferee's Decisions on H.R. 4961: The Tax Equity and Fiscal Responsibility Act of 1982*, H.R. Doc. No. 97–36, at 33 (2d Sess.1982) (hereinafter *"Compilation of Conferee's Decisions*, H.R. Doc. No. 97–36"). In addition, the language of the relevant provisions of H.R. 6300 and TEFRA are almost identical.[35] From this evidence, the court

---

cle, much less relied on it, the article falls short of the "monumental" status that plaintiff ascribed to it during briefing. Pl.'s Br. filed Jan. 4, 2005, at 13.

**33.** In fact, the copy of the ALI report that plaintiff provided to the court has a publication and copyright date of 1984. This was perhaps two years after TEFRA was enacted. Of course, the findings were adopted by the ALI much earlier than that, on May 20, 1982. This adoption date is after TEFRA had passed out of the House, which occurred on December 15, 1981, but before TEFRA was considered by the Senate in July of 1982. Therefore, it is possible that the ALI's remarks might have been considered and adopted in some form, such as by the Conference Committee that adopted H.R. 6300, 97th Cong. (1982). However, there is no evidence in the record establishing that the Conference Committee even received this report, much less relied upon it. Plaintiff deemed this "monumental," as well. *See* Pl.'s Br. filed Jan. 4, 2005, at 13.

**34.** The bill that contained the TEFRA provisions was H.R. 4961. This bill passed the House on December 15, 1981. It then underwent extensive amendments in the Senate; a different version was passed by the Senate on July 23, 1982. The House and Senate then appointed a Confer-

ence Committee to work out the differences between the two versions of the legislation. The Conference Committee finished its work on August 15, 1982. On August 19, 1982, both the House and Senate passed the Conference Report. The President signed the legislation on September 3, 1982, at which point it became Pub.L. No. 97–248.

The hearing regarding H.R. 6300 was held on May 18–19, 1982, some five months after TEFRA passed the House.

**35.** H.R. 6300 reads, in relevant part:

> Sec. 6229. Period of Limitations for Making Assessments.
> (a) General Rule.—Except as otherwise provided in this section, the period for assessing a deficiency of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
> (1) the date on which the partnership return for such taxable year was filed, or
> (2) the date prescribed for filing such return.

H.R. 6300, 97th Cong. § 602 (2d Sess.1982). A comparison with the language of I.R.C. § 6229

finds it likely that the Conference Committee did rely upon and adopt the language and reasoning of H.R. 6300.

Plaintiff proceeds to cite the testimony of IRS Commissioner Roscoe L. Egger, Jr., during the House Ways and Means Committee hearing regarding H.R. 6300. Commissioner Egger testified on the subject of partnership audits. Commissioner Egger opined that "[p]erhaps the biggest administrative problem the IRS encounters in auditing returns of partners is the requirement to deal separately with the return for each member in a partnership." *The Tax Compliance Act of 1982, and Related Legislation: Hearing on H.R. 6300 Before the House Comm. on Ways and Means,* 97th Cong. 18 (1982) (hereinafter *H.R. 6300 Hearing,* 97th Cong.) (statement of Roscoe L. Egger, Jr., Comm'r). As a solution the Commissioner supported the partnership audit proposals of H.R. 6300, which included "a separate statute of limitations for partnership items; [a] single audit and administrative appeals proced[ure,] ... [and] a single judicial proceeding to contest an IRS partnership audit." *Id.* at 19.[36] Plaintiff points out that the Commissioner's suggestions are part of the legislative history of H.R. 6300 and contends that H.R. 6300 was incorporated into the TEFRA legislation.

Plaintiff also cites the testimony of Assistant Secretary for Tax Policy John E. Chapoton. Mr. Chapoton "present[ed] the Treasury Department's views on H.R. 6300" during the hearings before the House Ways and Means Committee. *Id.* at 34. In his written testimony, he mentioned the origins of the partnership portion of the bill, stating that

> [a]lthough the portion of this Title applicable to partnerships was included in the bill at the request of the Administration, the Treasury Department and the Internal

Revenue Service worked closely with the staff of the Joint Committee on Taxation and the staffs of the tax writing committees in drafting this proposal. In addition, the reactions of various bar associations were solicited.

*Id.* at 80 (statement of John E. Chapoton).[37] Plaintiff argues that this position gives weight to the various prior statements by the IRS, Treasury, and ABA and ALI. The court notes, however, that Mr. Chapoton is not specific about what statements and submissions were relied upon in drafting the provision.

Plaintiff next cites the report of the Conference Committee in support of its position. The relevant section of the Conference Report reads:

> Statute of limitations on assessments
>
> General rules
>
> The period for assessment with respect to partnership items (or affected items) for any partnership taxable year shall not expire before 3 years from the date of filing the partnership return or, if later, the last date prescribed for filing such return determined without extensions.

H.R. Conf. Rep. No. 97–760, at 606 (1982), U.S. Code Cong. & Admin.News 1982, pp. 1190, 1378. After detailing the other partnership provisions, the report goes on to recite that nonpartnership items will continue to operate under existing rules:

> Continuation of existing rules for nonpartnership items
>
> Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner's tax liability attributable to nonpartnership income, loss, deductions, and credits.

shows the only difference to be the language of subpart (2), which read, upon the enactment of TEFRA, as it reads now: "(2) the last day for filing such return for such year (determined without regard for extensions)." I.R.C. § 6229(a)(2).

**36.** The quoted statements by Commissioner Egger are from the written statement that he provided to the House Ways and Means Committee.

Mr. Egger did not read this portion of the statement to Congress, but asked that it be included in the record.

**37.** The quoted statement by Mr. Chapoton is from the written statement that he provided to the House Ways and Means Committee. Mr. Chapoton did not read this portion of the statement to Congress, but asked that it be included in the record.

*Id.* at 611, U.S.Code Cong. & Admin.News 1982, pp. 1190, 1383. Plaintiff argues that, taken together, these two explanations are evidence that Congress wanted different statutes of limitations for partnership items and nonpartnership items. Defendant responds that the language "merely explains how § 6229(a) will operate. Nothing in the reports [indicates] that § 6229(a) operates as the exclusive limitations provision for assessments attributable to partnership items and wholly supplants § 6501 with respect to such assessments." Def.'s Br. filed Jan. 31, 2005, at 21. Defendant maintains that, if Congress had intended a consequence of that import, it would have made explicit mention in the committee reports.

However, defendant points out that when Congress enacted TEFRA, the language of former section 6501(*o*) was deleted. Inserted in its stead was a cross-reference that read: "Special Rules for Partnership Items.-For extension of period in the case of partnership items (as defined in section 6231(a)(3)), see section 6229." TEFRA, Pub.L. No. 97–248, 96 Stat. 667 (1982).[38] Defendant admits that I.R.C. § 7806(a) establishes that these cross-references do not constitute substantive law.[39] Nonetheless, defendant would argue that, much like committee reports, the cross-reference can be used as an "aid to construction of the statute." Def.'s Br. brief filed June 6, 2005, at 6. Plaintiff has two responses: First, plaintiff argues that this "extension" cross-reference only serves to "warn the unwary of the prohibition in the anti-Section 6501 extension provisions in section 6229(b)(3)," Pl.'s Br. filed June 15, 2005, at 4; second, plaintiff presents its own conflicting cross-reference that reads, "For limitation period in case of-... [a]ssessments of tax attributable to partnership items, see Section 6229." I.R.C. § 6504(11) (2000).

Finally, plaintiff and amicus offer the summary by the Congressional Joint Committee on Taxation ("Joint Committee"). After TEFRA was signed into law, the Joint Committee issued a document summarizing its provisions (hereinafter the "Blue Book"). It states:

> Statute of Limitations
>
> The period of limitations for assessments attributable to partnership items generally is the later of 3 years from the filing of the partnership return or the last day for filing such return, extended by the period during which suit may be filed, by the pendency of court proceedings, and for one year thereafter.

Staff of Joint Comm. on Taxation, 97th Cong., *Summary of the Revenue Provisions of H.R. 4961 (The Tax Equity and Fiscal Responsibility Act of 1982)* 61 (Comm. Print 1982) (hereinafter Staff of Joint Comm., *Blue Book for H.R. 4961* ). Plaintiff and amicus urge that this summary, rendered so close in time to the passage of TEFRA, should be accorded great weight. Defendant rejects the status of the Joint Committee summary as legislative history.

### 3) *History after the enacting Legislature*

Defendant cites evidence from committee reports from 1992 and 1997 that purportedly demonstrates Congress's intent to make the period an extension, rather than a separate limitation. First, defendant offers two 1992 committee reports dealing with tax bills before the House Ways and Means and the Senate Finance Committee. Both reports explained: "The period [under current law] for assessing tax with respect to partnership items generally is the longer of the periods provided by section 6229 or section 6501." H.R.Rep. No. 102–631, at 190 (1992); 138 Cong. Rec. S11,246 (1992). Defendant sponsors this passage as a statement of Congress's intention that the law be an extension and not a period of limitation. Plaintiff disagrees, noting that the 1992 legislation was never enacted and that, in any event, it re-

---

**38.** This provision was recodified as section 6501(n)(2) in 1984. I.R.C. § 6501(n)(2). It now is titled "Cross references" rather than "Special Rules for Partnership Items." *Id.*

**39.** "Defendant, however, does not contend that § 6501(n)(2) is substantive law." D's Br. filed

Jun. 6, 2005, at 6. Section 7806(a) reads, in pertinent part: "The cross references in this title to other portions of the title, or other provisions of law, where the word 'see' is used, are made only for convenience, and shall be given no legal effect." I.R.C. § 7806(a) (2000).

flected only the intent of the 102nd Congress, not the 97th Congress that enacted the TEFRA provision in dispute.

Next, defendant arrays the legislative history of section 6229(f)(2), a provision that was added to TEFRA in 1997. Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 1235(a), 111 Stat. 788. The report of the House Budget Committee, when analyzing current law, states that "[t]he period for assessing tax with respect to partnership items generally is the longer of the periods provided by section 6229 or section 6501." H.R.Rep. No. 105–148, 105th Cong., at 591 (1997), *reprinted in* 1997 U.S.C.C.A.N. 678. Defendant once again asserts that this statement manifests Congress's intent that the law be an extension, rather than a period of limitations. Plaintiff reiterates that defendant has relied on the will of a future Congress, not the enacting Congress, which is irrelevant.

### 3. *Analysis of legislative history*

Of the variety of legislative history offered to the court, only a fraction should be given significant weight. The court, in conducting this analysis, is mindful of the Supreme Court's admonition that legislative history is often "murky, ambiguous, and contradictory." *Allapattah Servs.,* 125 S.Ct. at 2626. Most importantly, the court must observe the guidepost that legislative history may only play a role where it "shed[s] a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms[.]" *Id.*

Much of the legislative history proffered by the parties and amicus does not illuminate the intent of the enacting legislature, but reflects the thinking of prior and subsequent legislatures. This type of legislative history might be given some weight if strong evidence linked it to congressional intent, but, in the context of the instant case, the evidence is too attenuated. Ultimately, the court finds that only the Conference Report is a suffi-

ciently reliable indicator of legislative intent to be afforded significant weight. To the extent that the Conference Report adopts H.R. 6300, H.R. 6300 and its legislative history are given some weight. Although the remaining history is instructive as background information, it is but of little use as an aid in interpreting Congress's intent when it drafted and enacted section 6229.

### 1) *Analysis of materials subsequent to the enacting legislature*

The committee reports published subsequent to the enacting legislature, in 1992 and 1997, will not be accorded any weight. These reports purport to interpret section 6229, but were written some ten years after TEFRA was enacted. Such documents cannot show the intentions of the enacting Congress and thus do not constitute legislative history at all. *See, e.g., Allapattah Servs.,* 125 S.Ct. at 2626 (specifying that legislative history is only useful where it illuminates views of enacting legislature).[40]

Even viewed in the light most favorable to defendant, these committee reports, at most, reflect Congress's interpretation of the current language of section 6229. However, it is not the proper role of the legislative branch to interpret the law; that is the role of the courts. *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). If a subsequent Congress wishes the law passed by a prior Congress to be read in a certain way, it can amend the law. Indeed, Congress would have the court's whole-hearted support and gratitude were it to undertake to amend section 6229. However, Congress cannot effect an authoritative interpretation of a law passed by the prior Congress using the vehicle of a committee report. Such interpretations do not "shed a reliable light" on the intentions of the enacting legislature and are accorded no weight. *Allapattah Servs.,* 125 S.Ct. at 2626.

---

**40.** Though not binding, the court finds helpful the reasoning of Justice Scalia:

The legislative history of a statute is the history of its consideration and enactment. "Subsequent legislative history"—which presumably means the *post*-enactment history of a statute's consideration and enactment—is a contradiction in terms. The phrase is used to

smuggle into judicial consideration legislators' expressions *not* of what a bill currently under consideration means ... but of what a law *previously enacted* means.

*Sullivan v. Finkelstein,* 496 U.S. 617, 631, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (Scalia, J., concurring).

### 2) *Analysis of materials prior to the enacting legislature*

The court gives little weight to the documents presented from Congresses prior to the enacting Congress. The court recognizes that, in some circumstances, materials prior to the enacting Congress can be useful as legislative history. *See, e.g., Conroy v. Aniskoff,* 507 U.S. 511, 514–15, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (giving weight to materials from some twenty-five years prior to the enacting legislature). However, mindful of the Supreme Court's guidance in *Allapattah Servs.,* 125 S.Ct. at 2626, that legislative history "[has] a role in statutory interpretation only to the extent [it] shed[s] a reliable light on the enacting Legislature's understanding" of ambiguities, the court finds that these materials are not a reliable enough indicator of the will of the enacting Legislature. The court is mindful of the fact that it was the 97th Congress-not the 94th, 95th, or 96th-that enacted TEFRA. It is thus the will of the 97th Congress that the court must consider. Materials from prior Congresses might have been valuable if plaintiff had provided some solid link between them and the enacting Congress. Thus, they are entitled to little weight. Each source will be examined in turn.

### (1) *The President's 1978 Tax Program*

Plaintiff's first cluster of legislative history centers upon the President's 1978 Tax Program and the testimony of IRS Commissioner Kurtz at the related committee hearing. It is apparently undisputed that the President's tax proposal involved a period of limitations. However, this does not necessarily mean it influenced the Congress that enacted the 1978 TEFRA statute.

Plaintiff does not cite, and the court cannot find, any mention of the President's 1978 Tax Proposal in the relevant materials of the 97th Congress.[41] No evidence can be found that the 97th Congress relied upon the President's 1978 Tax Proposal for anything at all. This renders the source worthless as legislative history for the relevant TEFRA provisions. *See Vogel Fertilizer Co.,* 455 U.S. at 34, 102 S.Ct. 821 ("[I]t is the intent of the Congress that [enacted the provision] . . . that [is] controlling.").

Defendant modestly observes that the President's proposal was never enacted into law in any form. The bill that allegedly contained the proposal, H.R. 12078, was referred to committee and never discussed. Defendant would have the court draw from this circumstance an affirmative intention of Congress to reject a separate statute of limitations on partnership items. The court declines to draw any such inference. First, as the Supreme Court has held, Congress's failure to pass a legislative proposal "lacks persuasive significance because several equally tenable inferences may be drawn from such inaction." *Cent. Bank of Denver, N.A.,* 511 U.S. at 187, 114 S.Ct. 1439. Furthermore, even if the court were to presume that the 95th Congress rejected a separate statute of limitations on partnership items by failing to enact H.R. 12078, this would not shed any light on the intentions of the 97th Congress in enacting TEFRA. *See Allapattah Servs.,* 125 S.Ct. at 2626; *Vogel Fertilizer Co.,* 455 U.S. at 34, 102 S.Ct. 821. Congress is entitled to change its mind, and over the course of four years, that surmise would not be unreasonable. Thus, the court neither gives weight to the material presented by plaintiff, nor accords its diminished effect the significance sought by defendant.

### (2) *The ABA article*

Next, plaintiff presents the article published by the American Bar Association, which, it contends, was the source of the phrase

---

41. The President's 1978 Tax Proposal is not mentioned in the TEFRA Conference Report, the Conference Report for H.R. 6300, or any other source that the court has located from the 97th Congress. The only mention of any administration tax plan was Mr. Chapoton's statement to the House Ways and Means Committee during the 1982 Hearings on H.R. 6300, in which he said that the partnership title of H.R. 6300 had been included at "at the request of the Administration." *H.R. 6300 Hearing,* 97th Cong. However, the mentioned proposal certainly was not the President's 1978 Tax Proposal. Notwithstanding the many other problems with such a theory, it seems distinctly unlikely to the court that President Reagan would have requested President Carter's tax proposal be included in the bill.

"shall not expire before" that is now incorporated into section 6229. However, this article fails to yield persuasive authority for the same reasons as the President's 1978 Tax Proposal. While the court agrees with plaintiff that this article advocates a separate statute of limitations and contains a similar phrase to that eventually found in the 1982 TEFRA, no evidence reveals that Congress relied upon the ABA article when drafting TEFRA. Congress did not mention the article in any of its materials. Under the circumstances the article hardly can be said to shine any "reliable light" on the provisions enacted by the 97th Congress.

Therefore, the legislative history that was purely prior or subsequent to the enacting Congress will not be accorded significant weight.

### (3) *Analysis of the legislative history of the enacting legislature*

### (1) *The repeal of the Revenue Act and the section 6501(n)(2) and section 6504(11) cross-references*

The materials that were viewed or considered by the enacting legislature fare better as persuasive documents. First, defendant proposes to clarify the intent of the enacting legislature by illuminating the law that they repealed. Defendant contends that, with the Revenue Act of 1978, the 95th Congress enacted section 6501(*o*), a provision to extend audit times. Section 6501(*o*) used the same "shall not expire before" language now found in section 6229. Furthermore, the 97th Congress repealed section 6501(*o*), leaving behind a cross reference: "For extension of period in the case of partnership items . . . see section 6229." I.R.C. § 6501(n)(2).

That much is undisputed. However, plaintiff and defendant disagree on how to interpret those actions by the 97th Congress. Defendant maintains that they are evidence that the audit extension provision was simply moved, with slightly modified language, to the partnership provisions under section 6229. Plaintiff contends that the repeal of section 6501(*o*) and its replacement with a new provision under the partnership section of the I.R.C. show that Congress intended section 6229 to be a new, separate partnership statute of limitations.

The court concludes that the legislative history is ambiguous on this point. The two provisions do have some language in common, including the phrase "shall not expire before." However, the phrase's presence in both the repealed section 6501(*o*) and the present section 6229 does not signify that Congress intended the language to mean the same thing in both places.

Furthermore, the cross-reference does little to shed light on the issue.[42] The cross-reference, "for extension of period in the case of partnership items . . . see section 6229," I.R.C. § 6501(n)(2), is susceptible to two different interpretations. First, it could be interpreted to alert those who came looking for the audit extension period that section 6229(a) should be consulted for the new audit extension period. Second, it could also be interpreted as warning the reader of the existence of section 6229(b)(3), which provides: "Any agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items."

The court concludes that the former interpretation more likely reflects congressional intent than the latter. If Congress had wished to notify the reader of the existence of 6229(b)(3)-a limitation on 6501(c)(4)'s extension agreements-Congress might have said: "for a limitation of extension periods in the case of partnership items . . .," or referred the reader specifically to subsection 6229(b)(3), rather than only the general section 6229. However, both interpretations are possible, and, because Congress did not intend these provisions to have the force of law, I.R.C. § 7806(a), little effort may have

---

42. Both parties agree that cross-references hold no force of law. I.R.C. § 7806(a). However, defendant contends, and the court tentatively accepts, the proposition that such cross-references might be used to shed light on the intentions of the enacting Congress. Because the court finds these cross-references equivocal, a decision that they were not worthy of weight would not change the court's result.

been expended in perfecting the wording. Therefore, the court does not consider this cross-reference to be unambiguous enough to shed a reliable light on the 97th Congress's understanding of the meaning of section 6229.

Further strengthening the conclusion that this cross-reference adds little clarity to the debate is the existence of a contradictory cross-reference cited by plaintiff. I.R.C. § 6504(11) reads: "For limitation period in case of-(11) Assessments of tax attributable to partnership items, see section 6229." This cross-reference was also enacted as part of the TEFRA legislation. TEFRA, Pub.L. No. 97–248, 96 Stat. 667 (1982). This provision is also susceptible to two interpretations. First, it may be interpreted to mean that Congress intended section 6229 to be a "limitation period" for the assessment of partnership taxes-a separate statute of limitations. However, it might also be interpreted as a warning to the unwary reader that special rules exist regarding partnership tax assessment limitation periods, such as the "extension" that the Government argues is provided by section 6229(a) or the limitation on extension agreements provided by section 6229(b)(3).

Once again, the court believes the former interpretation to be more likely than the latter. If Congress wished to refer a reader to an extension of a limitation, it seems strange to put the cross-reference under a section entitled "limitation period[s]." However, just as an examination of I.R.C. § 6501(n)(2) reveals, both interpretations are possible. Therefore, the court does not consider this cross-reference to be sufficiently unambiguous to aid it in divining the legislature's understanding of section 6229.

However, even if the court were to assume that the language of I.R.C. § 6501(n)(2) shows a congressional intent that section 6229 be an "extension," and that

section 6504(11) shows a congressional intent that section 6229 be a "period of limitations," these two cross-references would be in conflict and cancel out one another. This bolsters the court's conclusion that cross-references are not reliable indicators of the intentions of Congress. They thus will not be accorded any significant weight in interpreting section 6229(a).

### (2) *The ALI report*

Plaintiff presents a report by the American Law Institute that appears to support the idea of a separate statute of limitations on partnership items. However, plaintiff fails to present any evidence that Congress even viewed this ALI report, let alone relied upon it when writing the relevant TEFRA provisions.

Once again, legislative history is only beneficial to the extent that it gives reliable information regarding Congress's understanding of the meaning of section 6229. Because there is no evidence Congress viewed or relied on the ALI report, it is not legislative history, is not a reliable indicator of Congress's understanding, and will be given no weight.

### (3) *H.R. 6300 and its incorporation into TEFRA*

Plaintiff presents the text and history of H.R. 6300 in support of its position that section 6229 is a separate statute of limitations. While neither the House nor Senate passed H.R. 6300 or its equivalent, the legislation was adopted into the TEFRA Conference Report by the Conference Committee. *Compilation of Conferee's Decisions*, H.R. Doc. No. 97–36, at 33. Presumably both the Conference Committee and Congress-at-large were aware of the Committee Hearings for H.R. 6300 when they adopted the language of H.R. 6300 into TEFRA and enacted it into law.[43] The court will thus consider the

---

**43.** The court is dubious of the presumption that Members of Congress consistently read and rely upon printed committee hearings and reports in cases such as this. The hearing in question concerns the language of only a small part of an omnibus tax bill. Furthermore, H.R. 6300 was incorporated late, during the Conference Committee, and the court notes that the summary of

the Conferees' decisions, which formally announced the incorporation of H.R. 6300, was not published until only two days before the vote on the Conference Report itself. *Compilation of Conferee's Decisions*, H.R. Doc. No. 97–36. The summary was published August 17, 1982, and both the House and Senate voted on the Conference Report on August 19, 1982. The court is

H.R. 6300 material as legislative history relevant to the TEFRA legislation.

Plaintiff cites the testimony of IRS Commissioner Egger and bolsters it with the testimony of Assistant Secretary for Tax Policy John E. Chapoton. Mr. Chapoton testified that the IRS and the Treasury Department had both worked closely with the Joint Committee on taxation in drafting the partnership provisions of H.R. 6300 (which eventually were incorporated into TEFRA). Plaintiff maintains, and the court agrees, that this entitles Commissioner Egger and Mr. Chapoton's statements to some weight in interpreting the TEFRA provisions. *See Lindahl*, 470 U.S. at 788, 105 S.Ct. 1620 (" '[W]e necessarily attach great weight to agency representations to Congress when the administrators participated in drafting and directly made known their views to Congress in committee hearings.' " (quoting *Vogel Fertilizer Co.*, 455 U.S. at 31, 102 S.Ct. 821) (internal quotations omitted)). According to Mr. Chapoton, the IRS and the Treasury Department helped to draft H.R. 6300; they also "made known their views to Congress" at the hearings on H.R. 6300. Therefore, the testimony of Commissioner Egger and Mr. Chapoton falls under the holdings of *Lindahl* and *Vogel Fertilizer* and must be given due consideration.

While Mr. Chapoton had nothing to say about the statute of limitation provisions, Commissioner Egger was more forthcoming. Unfortunately, the statement is equivocal. At first blush, it seems to be evidence that the IRS was supporting a separate statute of limitations for partnership items. However, Commissioner Egger's testimony concentrated on the "biggest administrative problem the IRS encounters," which he argued "is the requirement to deal separately with the return for each member in a partnership." *H.R. 6300 Hearing*, 97th Cong. 18. He then included a "separate statute of limitations for partnership items" in his list of solutions. *Id.* However, in some sense of the word, there is a "separate" statute of limitations for partnership items under both plaintiff and defendant's interpretations of the statute. In plaintiff's reading the statute of limitations is "separate" because it replaces the statute of limitations in section 6501. In defendant's interpretation, the statute of limitations is "separate" for partnership items because it includes a specific, partnership-only extension provision—this sets it apart from regular audits. Furthermore, the fact that Commissioner Egger listed the "separate statute of limitations," along with a single audit procedure and a single judicial proceeding, as answers to the problem of the IRS's inefficient audits of large partnerships gives the court pause. It seems quite possible, if not likely, that Commissioner Egger was not championing the rights of partners to have a separate statute of limitations to replace section 6501, but instead championing the right of the IRS to have a separate partnership extension to the statute of limitations. Such imprecise use of language is no more or no less than the court has seen from the statute itself.

Because this testimony is open to two different interpretations, the court cannot find it decisive. It is equivocal, and cannot be of great use in determining Congress's understanding of section 6229. *See, e.g., Allapattah Servs.*, 125 S.Ct. at 2626 (holding that to be useful, the legislative history must shed a reliable light on the Legislature's understanding of a statute).

The court notes that, of the 455 pages of hearings regarding H.R. 6300, only the one sentence cited by plaintiff mentions the partnership statute of limitations provisions, and even that sentence was not uttered at the hearing, but, rather, submitted subsequently as part of the Commissioner's written testi-

---

"confident that only a small proportion of the Members of Congress read ... the Committee [document] in question[.]" *Blanchard*, 489 U.S. at 98, 109 S.Ct. 939 (Scalia, J., concurring). However, knowledge of the contents of such documents normally is imputed to Congress, even when such imputation seems questionable. *See, e.g., id.* at 91–96, 109 S.Ct. 939 (imputing to Congress knowledge of holding in case men-

tioned approvingly by committee report); *Conroy*, 507 U.S. at 521 n. 2, 113 S.Ct. 1562 (Scalia, J., concurring) (The assumption that a majority of Members of Congress read and agree with the statements of a person or committee relies upon "a sort of suspension of disbelief[.]"). The court thus proceeds under the assumption that Congress read the transcripts of the H.R. 6300 hearing.

mony. It seems unlikely that the statements at the Hearings for H.R. 6300 were heavily relied upon. Imagine a hypothetical member of Congress who, before his vote on TEFRA, wishes to know the meaning of the language that became section 6229. For him to read and rely on the hearings, he would sort through the Conference Committee summary to see that H.R. 6300 had been adopted by the Conference. Then he would hunt down a transcript of the hearings and review 455 pages to find the mention buried in a single sentence in the written statement of the IRS Commissioner. Even if the Commissioner's statement was clearly in favor of plaintiff-which it is not-this chain of events would be quite attenuated. This reinforces the court's decision that the statement should be given little weight in interpreting section 6229.

### (4) *The Conference Report*

Plaintiff also cites the Conference Report as favoring its position. If the Conference Report was straightforward, the court would accord it great weight-both the Supreme Court and the Federal Circuit have held that committee reports are the most authoritative form of legislative history. *See, e.g., Garcia,* 469 U.S. at 76, 105 S.Ct. 479 (holding that the most "authoritative source for finding the Legislature's intent lies in the Committee Reports"); *Zuber,* 396 U.S. at 186, 90 S.Ct. 314; *Bingham & Taylor Div.,* 815 F.2d at 1485 (holding that committee reports are "highly persuasive"). The question, then, is whether the Conference Report favors plaintiff. Defendant contends that the explanation only parrots the language of the statute.

The Conference Report reads, in relevant part: "The period for assessment with respect to partnership items (or affected items) for any partnership taxable year shall not expire before 3 years from the date of filing the partnership return ...." H.R. Conf. Rep. No. 97–760, at 606 (1982). The report goes on to set the "[c]ontinuation of existing rules for nonpartnership items[,]" reading, in relevant part: "Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner's tax liability attributable to nonpartnership in-

come, loss, deductions, and credits." *Id.* at 611.

These two statements, even taken in concert, are ambiguous as to the intention of Congress. The court, on the whole, agrees with defendant that the first provision tracks the language of the disputed statute itself. It even uses the identical "shall not expire before" language to describe the period of assessment. Even viewing it in contrast with the section regarding the continuation of nonpartnership rules does little to help plaintiff's cause. The fact that "[e]xisting rules relating to ... statutes of limitations ... will continue to govern ... liability attributable to nonpartnership income ..." means very little. *Id.* This is easily interpreted as a reference to nonpartnership items being handled under the default rules of section 6501, while partnership items are handled both under section 6501 and the extensions and other additions found in section 6229. Plaintiff's interpretation is also possible, but the result is only more ambiguity.

Because the Conference Committee Report is susceptible to interpretations that favor both plaintiff and defendant, it is equivocal. While committee reports in general are important to the interpretation of legislative history, in this case the Conference Report does not shed reliable light on the enacting legislature's understanding of section 6229. Therefore, it will be accorded little weight.

### (5) *The Blue Book*

Finally, plaintiff and amicus cite the summary of TEFRA provided by the Congressional Joint Committee on Taxation. This Blue Book reads in relevant part: "The period of limitations for assessments attributable to partnership items generally is the later of 3 years from the filing of the partnership return or the last day for filing such return...." Staff of Joint Comm., *Blue Book for H.R. 4961* at 61.

The court agrees with amicus that the Blue Book has the most favorable language for plaintiff. It roughly parrots the wording of the statute, but at least it substitutes the phrase "period of limitations" for the daunting "shall not expire before." *Id.* However, Blue Books are written after the passage of a

piece of legislation by the Staff of the Joint Committee on Taxation. *See generally* Michael Livingston, *What's Blue and White and Not Quite as Good As A Committee Report: General Explanations and the Role of "Subsequent" Tax Legislative History*, 11 Am. J. Tax Pol'y 91, 98–101 (Spring 1994). Because Blue Books are published subsequent to Congress's enactment of a statute, the Federal Circuit has said they are entitled to little weight. *Fed. Nat'l Mortgage Ass'n*, 379 F.3d at 1309 ("As a post-enactment explanation, the Blue Book interpretation is entitled to little weight.").[44] Therefore, in keeping with precedent, the court gives little weight to the Blue Book's statements.

### 4. *Summary of the legislative history*

The court finds the legislative history equivocal. It provides no reliable insight into the enacting Congress's intention in creating section 6229, either because it comes too early, too late, or is shadowed by the doubt of ambiguity. Since the meaning of section 6229 is still ambiguous after examining the legislative history, the court will next consider rules of construction to resolve the remaining ambiguity.

### VI. *Resolving remaining ambiguities by rules of construction*

If the statute remains ambiguous even after consulting the legislative history, other canons of construction must be consulted. Plaintiff and defendant rely on separate and conflicting rules that purport to resolve remaining ambiguities in favor of the taxpayer and the Government, respectively.

### 1. *Construction of tax collection statutes in favor of taxpayers*

First, plaintiff argues that all remaining ambiguity in a statute collecting tax revenue should be construed in favor of the taxpayer. The United States Supreme Court's initial annunciation on the matter in *Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 62

L.Ed. 211 (1917), approved of the established rule that the provisions of tax statutes are not to be extended "by implication ... beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out." *Id.* In addressing the issue of whether alimony was taxable income under Income Tax Act of October 3, 1913, 38 Stat. 114, 166, the Court in *Gould* was unable to determine if alimony fell within any of the terms used in the statute upon which a tax would be assessed. *Id.* Because of the lack of clarity, the Court concluded that alimony was not a taxable item and remarked that when an ambiguity, or doubt, existed in a tax statute, such statute was to be "construed most strongly against the government, and in favor of the citizen." *Id.*

This method of construction was disputed in a later Supreme Court decision, without direct citation to *Gould*, when the Court stated:

We are not impressed by the argument that, as the question here decided is doubtful, all doubts should be resolved in favor of the taxpayer. It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be.

*White v. United States*, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172 (1938); *see also Booth v. Comm'r*, 108 T.C. 524, 568, 1997 WL 328581 (1997) ("We do not agree with petitioners that any ambiguity is to be resolved in their favor."). *White* addressed the question of whether stockholders' losses from their stock in a liquidated corporation were ordinary or capital losses under sections 23 and 101 of the Revenue Act of 1928. *White*, 305 U.S. at 282, 59 S.Ct. 179. After analyzing and comparing sections 12, 21–23, 101, 112, 113, and 115, considering the judicial construction of section 115(c), and reviewing

---

**44.** The Federal Circuit did not resolve the tension between *Fed. Nat'l Mortgage Ass'n*, 379 F.3d at 1309, and *Fed. Power Comm'n*, 411 U.S. at 472, 93 S.Ct. 1723. The court notes, however, that *Fed. Nat'l Mortgage Ass'n* is the more recent

case by some twenty years. In addition, other federal courts of appeals have also treated Blue Books cautiously. *See* discussion *supra* notes 26, 27.

the legislative history of sections 101 and 115, the Court determined that such losses were capital losses. Petitioner's contention that such a reading lead to "harsh and absurd consequences" was allayed by the Court's refusal to ignore the language and history of the statute and thereby not to accrue equally harsh and absurd consequences in order to adopt the petitioner's construction. *Id.* at 292, 59 S.Ct. 179. Further, in what can serve as an outline for addressing statutory uncertainty, the Court recognized that initial doubts in a cursory examination of tax statutes disappear when the provisions are read in conjunction "with every other material part of the statute" and in consideration of the legislative history. *Id.*

In *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 93, 55 S.Ct. 50, 79 L.Ed. 211 (1934), the Supreme Court clarified the concept that a tax statute should be construed in favor of taxpayers if the legislation gives rise to doubt or ambiguity. The Court found such a rule inapplicable to the circumstances in the case on review, but it did not appear to negate the rule outright. Specifically, in *Helvering* the Court interpreted section 217(a) of the Revenue Act of 1926 in determining whether the interest paid on a tax refund falls within the meaning of "interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise," and whether the United States is a "resident" within such meaning. 293 U.S. at 85–86, 94, 55 S.Ct. 50. Through its analysis of the statute and a comparison of language within the Act, along with an examination of the status of the United States as both a "person" and "resident," the Court concluded that the United States was a "resident" and that interest received by a foreign corporation is interest on an "interest-bearing obligation" of a resident under section 217(a). *Id.* at 91, 55 S.Ct. 50. The Court emphasized its method of statutory interpretation, including the use of legislative history and intent, in prescribing a holistic approach to construction of a tax statute:

> The intention of the lawmaker controls in the construction of taxing acts as it does in the construction of other statutes, and that intention is to be ascertained, not by

taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will.

*Id.* at 93–94, 55 S.Ct. 50. The Court remarked that the legislature's intent should not be rejected merely to release the taxpayer from his burden or to provide him with a lesser burden under the statute at issue. *Id.* at 94, 55 S.Ct. 50. Finally, the Court noted that " 'the rule of strict construction is not violated by permitting the words of a statute to have their full meaning, or the more extended of two meanings. The words are not to be bent one way or the other, but to be taken in the sense which will best manifest the legislative intent.' " *Id.* (citing *Sacramento Nav. Co. v. Salz,* 273 U.S. 326, 329, 47 S.Ct. 368, 71 L.Ed. 663 (1927)).

Despite the reluctance to embrace the rule created in *Gould,* the rule has not been rejected. The Federal Circuit referred to a trial court's use of the canon without rejecting it. *Princess Cruises, Inc. v. United States,* 397 F.3d 1358, 1362 (Fed.Cir.2005). Instead, the Federal Circuit acknowledged the trial court's use of *Gould* and then addressed the plaintiff's alternative theory based on the retroactivity doctrine. When a tax statute is deemed to give rise to doubt or ambiguity, precedent dictates that the court thoroughly review the statutory provision at issue, along with the appropriate legislative history, to remove, if possible, the doubt and ambiguity from the statute's interpretation. If the ambiguity cannot be removed through this analysis, the remaining ambiguities in tax statutes might be resolved in favor of the taxpayer under the rule in *Gould.*

Most recently, the Federal Circuit recognized the *Gould* presumption in *Falconwood Co. v. United States,* 422 F.3d 1339, 2005 WL 2106570, 2005 U.S.App. LEXIS 2106570 (Fed.Cir. Sep. 2, 2005). In *Falconwood* the Federal Circuit narrowly construed a regulation governing downstream mergers of groups for tax purposes. The Federal Circuit, citing *Gould's* directive to construe statutes levying taxes "most strongly against the

government, and in favor of the citizen," held that they would give the regulation only its plain meaning and nothing else.

## 2. Construction of statutes of limitations in favor of the Government

In addition to being a tax statute, section 6229(a) also operates as either a statute of limitations or an extension of a statute of limitations. Defendant cites two Supreme Court cases for the proposition that "[s]tatutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *E.I. Dupont De Nemours & Co. v. Davis*, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924); *see Badaracco v. Comm'r*, 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (statute of limitations for government enforcement action must be clear and unambiguous; if no clear intent to bar government action, no time limitation exists). Plaintiff in *E.I. Dupont*, respondent on appeal, brought an action to recover demurrage charges on shipments of cotton linters. Defendant argued that the cause of action was barred by the statute of limitations. In a strict interpretation of section 16(3) of the Interstate Commerce Act, which provides a three-year statute of limitations for "carriers" subject to the Act for recovery of charges, the Court determined that an action by the Director General of Railroads, as an agent of the United States in its governmental capacity, was not a "carrier" under the Act and, as such, the statute of limitations did not apply to the action at issue. *E.I. Dupont*, 264 U.S. at 462, 44 S.Ct. 364.

Comparatively, *Badaracco* addresses the issue of determining the proper construction of the statute of limitations for tax assessments. At issue were I.R.C. § 6501(a), which sets forth a three-year period of limitations on the assessment of tax, I.R.C. § 6501(e)(1)(A), establishing a six-year period of limitations when a taxpayer nonfraudulently omits more than 25% of his gross income, and I.R.C. § 6501(c), which makes the prior two sections inapplicable and gives the IRS an unlimited period of limitations

when a taxpayer fails to file a return, intentionally files a false or fraudulent return, or willfully attempts to evade the assessment of tax. The plaintiffs had filed fraudulent returns, but subsequently filed nonfraudulent, amended returns for the years in question. As such, they asserted that the three-year period of limitations section of 6501(a), as opposed to the open-ended period of section 6501(c), applied. *Id.* at 389, 104 S.Ct. 756. After determining that the provisions at issue were unambiguous, the Court ruled that section 6501(c) plainly referred to an original return filed fraudulently, *id.* at 393, 104 S.Ct. 756, and that a later nonfraudulent return did not cure the initial fraudulent filing "for purposes of criminal prosecution and civil fraud liability under § 6653(b)," *id.* at 394, 104 S.Ct. 756.

## 3. Resolving the conflict between Gould and Badaracco

■ The *Gould* and *Badaracco* construction rules are in apparent conflict because at issue is a tax statute, which should be construed in favor of the taxpayer; it is also a possible statute of limitations, which should be construed in favor of the Government. *Compare Gould*, 245 U.S. at 153, 38 S.Ct. 53, *with Badaracco*, 464 U.S. at 392, 104 S.Ct. 756. However, it is the *Badaracco* standard that applies in the instant case.

*Badaracco* applied its canon in a case involving the three-year statute of limitations of I.R.C. § 6501(a)-a situation similar to the instant case. *Badaracco*, 464 U.S. at 392, 104 S.Ct. 756. The Supreme Court applied the canon favoring the Government without reference to the *Gould* canon favoring the taxpayer, even though *Badaracco* was handed down some sixty-seven years after *Gould*. Thus, the Court applied *Badaracco* over *Gould* in a case analogous to the instant case-one involving a tax statute that is also a statute of limitations. This amounts to a sub silentio holding by the Supreme Court that *Badaracco* provides the applicable presumption in the context of statutes of limitations involving tax revenue.[45] Therefore, with any

---

45. Logically, this must be the case. Every tax statute of limitations-one of which was the object

of the *Badaracco* presumption-will come up in the context of the Government attempting to

"limitation[ ] statute[ ] barring the collection of taxes otherwise due ..." to the Government, any ambiguities that remain after examining the plain language and the legislative history will be construed in favor of the Government. *Badaracco*, 464 U.S. at 392, 104 S.Ct. 756 (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir.1973)).[46]

### 4. *Analysis*

■ The court finds that the statute has multiple plausible meanings-it is ambiguous. Furthermore, the court holds that the legislative history is not reliable as it is equivocal and does not make clear the understanding of the enacting legislature as to the meaning of section 6229. In such a case, remaining ambiguity is resolved in favor of the Government when the statute at issue is a limitation statute barring the collection of taxes otherwise due. *Id.*

Section 6229 is such a statute. The ambiguity in question, if resolved against the Government, would bar it from the collection of taxes otherwise due. The ambiguity, when resolved in favor of the Government, allows it to collect its taxes. This presumption applies and the remaining ambiguity of section 6229 is resolved in favor of defendant. While the court regrets that poor drafting may have concealed Congress's intent, the evidence presented is not certain enough to overcome the strong presumption in favor of allowing the Government to collect the taxes owed to it. Therefore, section 6229(a) is held to contain an extension of time, not a separate statute of limitations on partnership items.

### VII. *The suspension of the period for assessing any tax by the FPAA*

■ Section 6229(d) provides that the mailing of an FPAA suspends the "period specified in [I.R.C. § 6229(a) ]," as modified

by other provisions of section 6229, during the period of court challenges and for one year thereafter. The foregoing analysis compels the conclusion that the applicable period of limitations that has been suspended is the period prescribed in I.R.C. § 6501(a). The "period specified in subsection (a)" means the "period for assessing any tax ... which is attributable to any partnership item," which period "shall not expire before" three years after the later of the filing of the partnership return or its due date. That period is set forth in I.R.C. § 6501(a), which governs taxes imposed by subsection A. Thus, the issuance of the FPAA has suspended the running of the applicable statute of limitations.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiff's motion for summary judgment is denied.

2. Because defendant did not move for summary judgment in its favor, the parties shall file by September 30, 2005, a Joint Status Report stating what actions must be taken or rulings made in order to enter a final judgment in this case.

---

collect revenue from the taxpayer. If *Gould* were to trump *Badaracco*, every attempt by the Government to make use of the *Badaracco* standard would be met and defeated by *Gould*. Such a rule would swallow the *Badaracco* presumption entirely, in which case the Supreme Court should never even have bothered to utter it. This cannot possibly be the law. Perhaps the sheer obviousness of this point is why the Supreme Court failed to mention it explicitly in its *Badaracco* opinion.

**46.** This conclusion is not in conflict with the recent Federal Circuit case *Falconwood Co.*, 422 F.3d 1339, 2005 WL 2106560, 2005 U.S.App. LEXIS 2106570. In that case the Federal Circuit examined the proper construction of a tax revenue statute and applied *Gould* to construe ambiguities in favor of the taxpayer. *Id.*, at 1348. However, *Falconwood* did not involve a statute of limitations and thus did not pose a conflict with the *Badaracco* standard.